**Affirmed and Opinion filed November 1, 2011.**



In The

# Fourteenth Court of Appeals

## NO. 14-10-00286-CR

**VICTOR ZAVALA, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 434th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 44055**

## O P I N I O N

Appellant, Victor Zavala, Jr., challenges his conviction for murder. In fifteen issues, he alleges error in almost every aspect of his trial, from denial of challenges for cause and improper commitment questions during voir dire, to numerous evidentiary rulings, restriction of cross-examination, and charge error during guilt-innocence, as well as challenging several overruled objections made during the State's closing argument. After a thorough review of the record and applicable law, we affirm.

## BACKGROUND

Appellant has not challenged the sufficiency of the evidence, so we relate the facts briefly here and throughout the opinion as necessary to address his issues.

On March 23, 2006, appellant drove to the apartment he shared with his ex-wife, Karen Goodspeed-Zavala.[1]  Karen had moved out of their shared residence a few days before but was there with movers to take some of the furniture.  Appellant entered the apartment and asked the movers to step outside.  According to appellant, after the movers went outside, Karen started "screaming and . . . making numerous remarks," including allegations that appellant had sexually molested her daughters.  Appellant went outside to ask the movers how much they were owed.  Karen locked the door and refused to admit him back into the apartment.  Appellant tried to unlock the door but was unable to do so and kicked in the door of the apartment.  Karen retreated to her daughter's (appellant's stepdaughter's) room and called 911; appellant pursued her into that room by kicking that door in as well.  Appellant took Karen's cell phone away from her, and she bit his finger.  Appellant stated that he calmed Karen down, and the two went into the dining room to talk.  Because they were thirsty, they went into the kitchen to get a bottle of water.  While appellant's back was turned, Karen took a knife from a butcher's block on the counter.  According to appellant, she stated, "[I]f I can't kill you, I'm going to kill myself[.]"

Appellant claimed that he moved towards Karen in an attempt to disarm her, and the two struggled.  As he took the knife from her, he accidentally cut her arm when they fell.  Appellant stated that Karen bit his finger again when he took the knife from her.  He stabbed her once more as they were struggling.  He testified that he suffered a cut on his forearm, although none of the other witnesses confirmed this cut.  Appellant stated that he then "blacked out" and did not remember anything until an officer arrived at the scene.

---

[1] Although they had divorced several years before this incident, Karen and appellant continued to live together.  Karen, however, had moved out at least once before.

However, he stated that he thought he heard Karen telling him to "stop" as he was struggling with or stabbing her. Karen ultimately died from multiple stab wounds.

Appellant admitted stabbing Karen but claimed that he did so in self-defense. A jury convicted him of murder, and the trial court sentenced him to thirty years' confinement. Appellant's motion for new trial was denied by the trial court. This appeal timely ensued.

## ANALYSIS

For ease of analysis, we group appellant's issues into several main categories.

## A.     Burden of Proof

In his first issue, appellant asserts that the trial court erred in placing the burden of proof on him regarding sudden passion. He asserts that doing so violates the Sixth Amendment and his due process rights. The Texas Penal Code provides as follows:

> At the punishment stage of a trial, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree.

Tex. Penal Code Ann. § 19.02(d) (West 2011). Thus, the question of "sudden passion" is not an aggravating fact that exposes the defendant to a potentially greater sentence;[2] rather it is an issue in mitigation of punishment. "A state may, without violating due process, . . . require a defendant to prove facts in mitigation of punishment . . . [like] extreme emotional disturbance." *Perry v. State*, 158 S.W.3d 438, 448 n.14 (Tex. Crim. App. 2004); *see also Noland v. State*, 264 S.W.3d 144, 151 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (holding that section 19.02(d) of the Texas Penal Code does not

---

[2] Aggravating facts, *i.e.*, those that would increase a defendant's punishment, must be proven beyond a reasonable doubt. *See Perry v. State*, 158 S.W.3d 438, 446–47 & n.8 (Tex. Crim. App. 2004) (noting that this requirement is based on the Sixth Amendment right to a jury trial and the right to have every element of an offense proven beyond a reasonable doubt).

3

violate the Sixth Amendment); *Green v. State*, 971 S.W.2d 639, 643–44 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) (explaining that requiring a defendant to prove issues in mitigation of punishment by a preponderance of the evidence does not violate due process). Accordingly, this issue is without merit and is overruled.

## B. Voir Dire Issues

### 1. Challenges for Cause

In his second and third issues, appellant contends that the trial court erred by denying his challenges for cause to venire members 38 and 68. We afford the trial judge considerable deference in determining challenges for cause because he or she is in the best position to evaluate a prospective juror's demeanor and responses. *Russeau v. State*, 171 S.W.3d 871, 879 (Tex. Crim. App. 2005). We will reverse a trial court's ruling on a challenge for cause only when a clear abuse of discretion is evident. *Id.* When a prospective juror's answers are vacillating, unclear, or contradictory, we defer to the trial court's decision on a challenge for cause. *Segundo v. State*, 270 S.W.3d 79, 93 (Tex. Crim. App. 2008).

Both of these panel members initially indicated in their voir dire responses that they could not consider probation in a murder case. However, both venire members were called back before the trial court and individually questioned. During their individual questioning, both panel members stated that they could consider probation in a murder case under the appropriate circumstances. For example, venireperson 38 stated, "I wouldn't categorically exclude [probation] as an option." Further, venire member 68 stated that she would be "open" to probation in the "appropriate case." Thus, these panel members were, at most, vacillating jurors. Accordingly, the trial court was in the best position to determine whether they could be fair and impartial. *See id.*

Appellant further asserts that panel member 68 had language difficulties, which should have precluded her from jury eligibility. However, the trial judge spoke directly with her and concluded: "Based on what I heard and saw and observed in her

4

responsiveness to the questions I believe that she understands really, even though she has had to overcome a language barrier better than many people who have been here all their lives." Under these circumstances, appellant has not established that the trial court clearly abused its discretion in denying his challenges for cause. *Russeau*, 171 S.W.3d at 879. We overrule his second and third issues.

2. *Commitment Questions*

In issue four, appellant complains that the State was permitted to ask improper commitment questions of venireperson 26, which lead to this juror's being rehabilitated and serving on the jury. The scope of permissible voir dire examination is necessarily broad to enable litigants to discover bias or prejudice so that they may make challenges for cause or peremptory challenges. *Sanchez v. State*, 165 S.W.3d 707, 711–12 (Tex. Crim. App. 2005). But questions that are not intended to discover bias or prejudice and instead seek only to determine how jurors would respond to the anticipated evidence and commit them to a specific verdict on that evidence are not proper. *Id.*

Appellant contends that the following exchange between the State and venireperson 26 consisted of improper commitment questions leading to the juror's rehabilitation and service on the jury:

> [The State]: Okay. I understand where you're coming from, [venire person 26], but what I want you to do is think about this: About what might be an appropriate case, and can you keep an open mind to what different kinds of cases there could be of an intentional murder. Let me -- go for it. And I'm not asking you if you'd do it in this particular case or in any particular case. I just want to try to demonstrate to you the different ranges of things that could be encompassed in that.
>
> Someone goes up to a stranger in the street --
>
> [Appellant]: Objection to the specific hypotheticals and ask for a running objection.
>
> [The Court]: Overruled. You may have a running objection.

5

. . .

[The State]: And we go through -- someone walks up to someone in the street, pulls out a gun and just shoots them right there and they're gone; that's an intentional murder, okay. I'm not asking what you'd do in that case, I'm not asking what you'd do in this case, but intentional murder can also encompass what [another venireperson] was talking about. Someone's child has been hurt or harmed some way. The parent knows who they are. Do you remember [the other venireperson] talking about this today and then goes and finds him and eliminates them. For [the other venireperson], that was the bell that rung it for her saying there may be circumstances out there where I could consider probation. That may or may not be an appropriate case for you. I don't know, and I'm not asking you to clear that now.

I talked yesterday about the husband and wife where one is critically ill and in a lot of pain and then the other spouse unhooks the life support knowing what the consequences would be and actually wanting those consequences to happen. I'm not asking if you can give probation in that case or not, but can you recognize that there's all different kinds of how those are very different from the first one that I talked about?

[Venireperson]: Yes.

[The State]: And understanding that, I'm not asking you to come up with facts in which you would give it, I'm certainly not trying to do that; could you keep an open mind to the possibility that that situation exists, and if it does, will you give probation in an appropriate case?

[Venireperson]: Yes.

. . .

[Appellant]: You're now saying you can conceive of a murder case where you could consider the possibility of giving as light as a five-year probated sentence?

[Venireperson]: Yes, if the situation allows that.

Although appellant objected to the "specific hypotheticals," it is not clear that he was complaining about "improper commitment questions." In fact, not all commitment questions are improper. Commitment questions are permissible, for example, when such

6

questions would result in a challenge to a prospective juror for cause, so long as the question includes only those facts necessary to establish the challenge. *Id.* at 712. Moreover, appellant's counsel challenged this prospective juror because he did not believe, based on the specific facts of this case, that this panel member would have an open mind regarding probation.[3] Such a challenge is not a valid ground to remove a panel member for cause.[4] Rather, appellant's counsel himself anticipated the evidence and determined that this particular juror would refrain from considering probation based on the facts of this specific case. *Cf. Sanchez*, 165 S.W.3d at 711–12 (providing that seeking to commit a juror to an outcome based on specific facts of the case is improper). In short, appellant has established neither that the State raised improper commitment questions nor that his objection to this particular panel member had any valid legal basis. For the foregoing reasons, we overrule appellant's fourth issue.

## C.    Evidentiary Issues

In issues five, seven, eight, and nine, appellant challenges several of the trial court's evidentiary rulings. A trial court's evidentiary rulings are reviewed for an abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990) (en banc). An appellate court must uphold a trial court's evidentiary rulings if they are

---

[3] Specifically, appellant's counsel asserted:

Well, I still challenge because we ain't going to have no mercy killing evidence in this case. And I think the truth of the matter is for this type of case, his mind is closed to the option of probation. And so he is not really -- and I think that played out in the way we questioned him. That's why I don't want to give him the mercy killing example because this is not a mercy killing, and it will be nothing close to that in this case. So, when they say they wouldn't consider probation for murder, they mean it, and they will not -- he will not -- if he sits on this jury, he will not consider -- he will not give meaningful consideration to the option of probation.

[4] As is relevant here, a juror who cannot keep an open mind to the full range of punishment—that is, remain open to the idea that in some circumstances the minimum punishment will be appropriate and in some circumstances the maximum will be—is challengeable for cause. *See* Tex. Code Crim. Proc. Ann. art. 35.16(b)(3), (c)(2) (West 2006).

7

reasonably supported by the record and correct on any applicable theory of law. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

### 1. *Admission of Exhibits 87 and 87A*

Appellant asserts in issue five that the trial court erred in admitting State's exhibits 87 and 87A, consisting of a recorded jail-house telephone call he made and a transcript of the call. In this phone call, appellant commented that he wanted the police to find a computer he had left in his truck. In his brief, appellant asserts only that this evidence wasted the jury's time on a collateral matter having nothing to do with his guilt or innocence.[5] Appellant has failed to describe how the contents of the recording were unfairly prejudicial. To be error, the trial court's ruling must amount to an abuse of discretion. *Montgomery*, 810 S.W.2d at 379. Appellant cites no authority to support a claim that the trial court abused its discretion and has shown no harm. Accordingly, we overrule his fifth issue.

### 2. *Exclusion of Prosecutor's Testimony Regarding Alleged* Brady *Information*

In his seventh issue, appellant argues that the trial court erred by refusing to allow one of the prosecutors to be called as a witness to testify about an email including alleged *Brady*[6] statements. Specifically, appellant wanted to call this prosecutor to testify regarding an email the prosecutor had sent to appellant's counsel, in which the prosecutor related statements made by one of the detectives who had interviewed appellant. In this email, the prosecutor stated: "For what it is worth, I spoke with Detective Colunga today. She is of the opinion that [appellant] was in such a rage that he did not understand/appreciate/know his actions after the first stab." As discussed in more detail below, appellant thoroughly cross-examined Detective Colunga regarding this email,

---

[5] The State asserts that this phone call cast doubt on his claim of self-defense: had appellant not expected police involvement when he went to his apartment to confront his ex-wife, why would he have stated that he wanted the police to discover the computer in his vehicle at the scene of the offense?

[6] *See Brady v. Maryland*, 373 U.S. 83, 87–88 (1963) (requiring prosecution to disclose exculpatory evidence to defendants in criminal cases).

8

even providing a copy to her to refresh her memory. Detective Colunga stated that, although she believed that people could suffer black outs such as that described by appellant, she did not tie her general belief to the facts of this case. Thus, this allegedly exculpatory evidence was provided to appellant by the State, and he was able to cross-examine the alleged communicant. Accordingly, there was no *Brady* violation in this case.

Moreover, allowing the prosecutor to testify about an email—an out-of-court statement[7]—regarding another out-of-court statement allegedly made by Detective Colunga would have involved violations of the hearsay rules. *See* Tex. R. Evid. 801, 805 (defining hearsay and hearsay within hearsay). Appellant has not identified any exception to the hearsay rules applicable to this evidence. *See* Tex. R. Evid. 802 (providing that hearsay is generally not admissible except as provided by statute or rules of evidence or other rules prescribed pursuant to statutory authority). Appellant has not established that the trial court abused its discretion in refusing to permit the prosecutor to testify about this email. We overrule appellant's seventh issue.

### 3. Admission of Sexually-Oriented Emails and Alleged Sexual Fantasizing by Appellant

In issue eight, appellant contends that, despite his Texas Rules of Evidence 403 and 404 objections, the trial court erred in admitting evidence regarding extraneous offenses, including sexually-oriented emails sent to his stepdaughter and an admission by appellant to his stepdaughter that he was fantasizing about her. Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403. Rule 404 limits admission of character evidence and admission of other crimes, wrongs, or acts, unless certain exceptions apply. Tex. R. Evid. 404. The Rules of

_____

[7] Tex. R. Evid. 801(a) ("A 'statement' is . . . an oral or written verbal expression. . . .").

9

Evidence favor admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial. *Smith v. State*, 105 S.W.3d 203, 207 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (citing *Montgomery*, 810 S.W.2d at 389).

Outside the presence of the jury, the State proffered emails sent by appellant to his stepdaughter from an email account he had set up under the name "Jason." These emails were sexual in nature. Appellant stated that he, with Karen's knowledge and consent, sent these emails as part of an "internet sting" to see if his stepdaughter would respond to them in a sexual manner. His stepdaughter was unaware that it was appellant who had sent these emails. The State additionally proffered the testimony of appellant's stepdaughter that appellant admitted to her that he was fantasizing about her. His stepdaughter stated that she and her mother moved out of the apartment they had shared with appellant shortly after she told her mother that appellant disclosed that he was fantasizing about her. The State argued that this evidence helped establish appellant's motive and intent in killing Karen. Appellant objected to the admission of this evidence under Rules 403 and 404. After a hearing outside the presence of the jury, the trial court overruled his objections and this evidence was presented to the jury.

As noted above, we must uphold a trial court's evidentiary rulings if they are reasonably supported by the record and correct on any applicable theory of law. *Willover*, 70 S.W.3d at 845. All of this evidence was admitted after appellant's cousin testified that appellant treated his stepdaughters "awesome" and "loved the girls." Additionally, appellant testified about his own good conduct involving his stepdaughters. Thus, the challenged evidence was admissible as rebuttal under the Texas Rules of Evidence, which provide that character evidence is admissible to rebut an accused's character evidence. Tex. R. Evid. 404(a)(1)(A). Further, the State's theory was that appellant killed his wife in a rage when she confronted him about inappropriate sexual conduct involving her daughter. In fact, appellant admitted in his statements to law

10

enforcement that his ex-wife had accused him of molesting his stepdaughter before he stabbed her. This evidence was thus probative of his motive and intent. *See* Tex. R. Evid. 404(b) (stating that evidence of other crimes, wrongs, or acts is admissible for proof of motive and intent, among other things). Additionally, the trial court provided limiting instructions, both orally and in its written instructions to the jury, that the jury could consider this evidence only if it believed that these acts occurred beyond a reasonable doubt and then only for the limited purpose of establishing appellant's motive or intent to kill Karen. Under these circumstances, we cannot say the trial court abused its discretion in admitting this evidence. We overrule appellant's eighth issue.

### 4. Admission of Psychologist's Testimony

In issue nine, appellant asserts that the trial court erred in admitting the testimony of a psychologist, Dr. Karen Gollaher, over his (1) *Daubert/Kelly* objection,[8] (2) objection that she could not tie her general testimony to the specific facts of the case, and (3) objection that her opinion was essentially an opinion on his truthfulness. Expert testimony must aid, not supplant, the jury's fact-finding role, and expert testimony that constitutes a direct opinion on the truthfulness of a witness does not assist the jury, and is thus inadmissible. *Schutz* v. State, 957 S.W.2d 52, 70 (Tex. Crim. App. 1997) (en banc); *Yount v. State*, 872 S.W.2d 706, 708 (Tex. Crim. App. 1993) (en banc).

Before Dr. Gollaher testified, the trial court conducted a hearing outside the presence of the jury. At the conclusion of the hearing, the trial court determined that Dr. Gollaher was qualified, her testimony would aid the jury, and she could tie her testimony to the specific facts of the case without reaching an ultimate conclusion regarding whether appellant suffered from dissociative amnesia.

---

[8] Our review of the record indicates that appellant did not preserve this issue for appeal. On the referenced portion of the record, appellant objected to Dr. Gollaher's testimony because she could not tie it to the specific facts of the case, it would be more prejudicial than probative under Texas Rule of Evidence 403, and it amounted to an opinion on appellant's truthfulness.

Before the jury, Dr. Gollaher testified that some aspects of appellant's description of the events surrounding Karen's death were consistent with dissociative amnesia, but others were consistent with malingering. She specifically referenced appellant's testimony and the interviews he gave to detectives in making these statements. Thus, her testimony was sufficiently tied to the facts of the case. Further, as discussed next, appellant has failed to identify what harm, if any, resulted from Dr. Gollaher's testimony.

Although testimony by an expert that a witness displays malingering behavior may approach the line of commenting on the witness's truthfulness,[9] in this case, appellant has not explained how Dr. Gollaher's testimony caused him harm. In fact, she informed the jury that she could not express an ultimate opinion as to whether appellant suffered from dissociative amnesia without interviewing and testing appellant. Under these circumstances, we conclude that Dr. Gollaher's testimony was, at most, unhelpful to the jury because she described part of his behavior as consistent with dissociative amnesia and part of his behavior as consistent with malingering. "Any error . . . that does not affect substantial rights must be disregarded." Tex. R. App. P. 44.2(b). Because appellant has not explained how any error the trial court may have committed in admitting Dr. Gollaher's testimony harmed him and harm is not apparent from the record, we cannot say the trial court abused its discretion in admitting her testimony. We overrule appellant's ninth issue.

---

[9] We note, however, that at least one court of appeals has approved an expert's testimony that she has "ruled out" malingering. *Dolan v. State*, No. 11-00-00306-CR2001 WL 34373584, at *3 (Tex. App.—Eastland Sept. 20, 2001, no pet.) (not designated for publication). Additionally, in the context of a competency hearing, doctors often testify that a defendant's symptoms are suggestive of malingering. *See, e.g.*, *Davis v. State*, 313 S.W.3d 317, 336 (Tex. Crim. App. 2010) (noting that doctor, after reviewing a DVD statement appellant made at the police station, concluded that appellant's complaints were indicative of malingering); *Williams v. State*, 191 S.W.3d 242, 250 (Tex. App.—Austin 2006, pet. ref'd) ("Dr. Schmidt, who had not personally examined appellant, testified that appellant's medical record reflected inconsistent symptoms that suggested malingering or faking symptoms for a secondary gain or to go to a hospital.").

## D.      Restriction of Cross Examination

In his sixth issue, appellant complains that the trial court denied him due process, due course of law, effective assistance of counsel, and the right to confront and cross-examine Detective Colunga by unduly restricting his examination of this detective.  "The U.S. Constitution ensures that criminal defendants will have a 'meaningful opportunity to present a complete defense.'"  *Miller v. State*, 36 S.W.3d 503, 506 (Tex. Crim. App. 2001) (quoting *Gilmore v. Taylor*, 508 U.S. 333, 343 (1993)).  This principal has been invoked in cases in which the trial court has excluded evidence.  *Id.*

Appellant provides the following laundry list of allegedly erroneous rulings made during his examination of Detective Colunga, without providing any specific argument as to how these rulings were erroneous:[10]

1.      Excluding appellant's video statement;

2.      Barring the answer to a question about the written statement being based on the questioning shown in the video statement;

3.      Barring the answer to the question as to appellant's being observed by the detective during the questioning;

4.      Barring the answer to the question as to whether appellant was crying during the questioning;

5.      Barring the answer to the question of whether appellant was disoriented during the questioning;

6.      Barring the answer to the question of whether Detective Callie told appellant that she appreciated him being honest;

7.      Barring the answer to the question about appellant's being told the complainant was dead;

8.      Barring the answer to the question about whether the witness formed the opinion that appellant did not appreciate or understand his actions after the first stab;

9.      Barring the answer to the question as to whether the witness told appellant that she believed him;

---

[10] Arguably, appellant has waived this issue by failing to properly brief it.  *See* Tex. R. App. P. 38.1(i) (providing that a brief must contain a clear and concise argument for the contentions made with appropriate citations to *authorities* and the record).

13

10.     Barring the answer to the question that appellant gave a lot more detail in his video statement;

11.     Barring the answer to the question about whether appellant clarified his previous statement in his video interview; and

12.     Refusing to admit into evidence a redacted email from the trial prosecutor to defense counsel that the witness had told him that appellant did not understand/appreciate/know his actions after the first stab.

With the exception of numbers 8 and 12, all of appellant's complaints concern the admission of the second interview appellant had with Detective Colunga. Number 12 is discussed supra, in section C.2 of this opinion. Regarding number 8, appellant actually provided the email at issue to Detective Colunga and questioned her about this issue. As noted above in section C.2, Detective Colunga testified that she believed people could black out, but she expressed no opinion regarding whether appellant blacked out in this case. Thus, complaints 8 and 12 are meritless.

The remainder of appellant's complaints concern questions asked of Detective Colunga regarding his behavior or statements made during his second interview. This interview was video-taped at the police station several hours after appellant gave his initial recorded statement at the scene of the offense. The trial court refused to admit this video-taped statement during appellant's examination of Detective Colunga. However, this statement was admitted in its entirety later in his trial. Thus, the jury was able to view the video, see appellant's demeanor, and hear the statements made during the interview. Accordingly, any error the trial court may have made in refusing to admit the video-taped interview during Detective Colunga's examination was rendered harmless beyond a reasonable doubt by the later admission of the same evidence. *See* Tex. R. App. P. 44.2(a); *see also Bolen v. State*, 321 S.W.3d 819, 826–27 (Tex. App.—Amarillo 2010, pet. ref'd) (citing *Preston v. State*, 481 S.W.2d 408, 409 (Tex. Crim. App. 1972)). We overrule appellant's sixth issue.

14

**E.      Charge Error**

In his tenth through fourteenth issues, appellant complains about several specific aspects of the trial court's charge to the jury on guilt-innocence.  When reviewing allegations of charge error, an appellate court must first determine whether error actually exists in the charge.  *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (en banc).  Only if error is found must we determine whether it caused sufficient harm to require reversal. *Id.*

*1.      Reasonable Doubt Instruction*

In issue ten, appellant asserts that the trial court erred in instructing the jury over his objection that "[i]t is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof exclude all 'reasonable doubt' concerning the defendant's guilt."  Appellant asserts in his brief that this language is prohibited by *Paulson v. State*. 28 S.W.3d 570 (Tex. Crim. App. 2000).  To the contrary, however, this language was not prohibited by *Paulson*, although the Court of Criminal Appeals stated that the better practice is to give to the jury no definition of reasonable doubt at all.  *Id.* at 572–73.  Moreover, the Texas Court of Criminal Appeals has determined repeatedly that including this instruction in a jury charge is not an abuse of discretion.  *Mays v. State*, 318 S.W.3d 368, 389 (Tex. Crim. App. 2010); *Woods v. State*, 152 S.W.3d 105, 115 (Tex. Crim. App. 2004) (en banc).  Appellant's tenth issue is without merit and is overruled.

*2.      Right to Continue Attacking*

Appellant contends that the trial court erred by refusing to submit an instruction on the right to continue attacking in his eleventh issue.  He relies on *Key v. State*, a 1946 opinion from the Court of Criminal Appeals, to support his argument.  192 S.W.2d 563, (Tex. Crim. App. 1946).  In *Key*, the Court determined that, if the facts raise the issue, an instruction should be given that a defendant may continue to shoot (or continue attacking) so long as there was an appearance of danger to himself from the threatened assault.  *Id.*

at 567. Here, the facts do not raise this issue: appellant testified that, after the first time he stabbed his ex-wife, he blacked out and could not remember what happened until the police arrived. Thus, there is no evidence to support the instruction because there is nothing in the record to suggest the decedent's continuing to threaten appellant after he stabbed her with the knife for the first time. Because the facts of this case do not raise this issue, appellant's requested instruction was not necessary. We therefore overrule his eleventh issue.

### 3. *Felony-Murder Instruction*

In his related twelfth and thirteenth issues, appellant contends that the trial court erred in submitting the alternative of convicting him for felony murder and refusing to submit a requested instruction on jury unanimity and separate verdict forms for each manner of committing the offense. Here, the trial court submitted three manners by which appellant could have murdered his ex-wife:

(1) Intentionally or knowingly causing her death;

(2) Intentionally causing serious bodily injury and committing an act clearly dangerous to human life that caused her death; or

(3) Committing or attempting to commit a felony offense and while in the course of and in furtherance of the commission or attempt, committing an act clearly dangerous to human life that caused her death.

These instructions comports with the Texas Penal Code's definition of the offense of murder. *See* Tex. Penal Code Ann. § 19.02(b)(1), (2), (3). The third definition is known commonly as "felony murder."

Appellant claims that aggravated assault cannot be used in an allegation of felony murder because it is potentially a lesser-included offense of manslaughter. *See Johnson v. State*, 4 S.W.3d 254, 258 (Tex. Crim. App. 1999) ("[A] conviction for felony murder under section 19.02(b)(3) will not lie when the underlying felony is manslaughter or a

16

lesser included offense of manslaughter."). However, the Court of Criminal Appeals has since concluded that aggravated assault is not a lesser-included offense of manslaughter and may serve as the predicate offense for felony murder. *Lawson v. State*, 64 S.W.3d 396, 397 (Tex. Crim. App. 2001) ("An 'intentional and knowing' aggravated assault is not a lesser included offense of manslaughter, nor is it statutorily includable in manslaughter."). Hence, appellant's twelfth issue is without merit and is overruled.

In appellant's thirteenth issue, he asserts that the trial court erred by refusing to submit three separate verdict forms for the three different manners of committing murder. As appellant concedes in his brief, the Court of Criminal Appeals has approved the use of a general verdict form when the State alleges both intentional and felony murder. *See Aguirre v. State*, 732 S.W.2d 320, 326 (Tex. Crim. App.1987) (en banc) (op. on reh'g) ("Because appellant's indictment did not allege different offenses but only alleged different ways of committing the same offense, the court properly furnished the jury with a general verdict form."). Under these circumstances, we overrule appellant's thirteenth issue.

### 4.    *"Provoking-the-Difficulty" Instruction*

In his fourteenth issue, appellant contends that the trial court erroneously instructed the jury regarding the concept of "provoking the difficulty." The doctrine of provocation is codified in the Texas Penal Code and has its roots in the common law. *See* Tex. Penal Code Ann. § 9.31(b)(4) (West 2011); *Smith v. State*, 965 S.W.2d 509, 513 (Tex. Crim. App. 1998) (en banc). The Penal Code provides that the use of force against another is not justified

> if the actor provoked the other's use or attempted use of unlawful force, unless:
>
> (A) the actor abandons the encounter, or clearly communicates to the other his intent to do so reasonably believing he cannot safely abandon the encounter; and

(B) the other nevertheless continues or attempts to use unlawful force against the actor[.]

Tex. Penal Code Ann. § 9.31(b)(4).

An instruction on provocation is required when there is sufficient evidence that (1) the defendant did some act or used some words which provoked the attack on him, (2) such act or words were reasonably calculated to provoke the attack, and (3) the act was done or the words were used for the purpose and with the intent the defendant would have a pretext for inflicting harm upon the other. *Smith*, 965 S.W.2d at 513. Each of these elements is a question of fact. *Id.* An instruction on provocation should be given only when there is evidence from which a rational jury could find every element of provocation beyond a reasonable doubt. *Id.* at 514. If a jury finds that the defendant provoked an attack and then assaulted the other person, self-defense is not available as a defense. *Id.* at 513. On appellate review, we ask whether there was sufficient evidence from which a rational jury could have found provocation beyond a reasonable doubt, viewing the evidence in the light most favorable to giving the instruction. *Id.* at 514.

Here, the following evidence supports the trial court's instruction. Appellant discovered that Karen was with movers at his apartment. He drove from work to his apartment to confront her and, when he arrived, he asked the movers to step outside the apartment. According to appellant, Karen accused him of molesting her daughters. After he went outside the apartment to ask the movers how much they were owed, Karen locked the apartment door and refused him entry. Instead of leaving, appellant kicked in the apartment door. Karen retreated to her daughter's room, locked that door, and called 911. Appellant kicked in that door and took Karen's phone from her. Although he claimed she calmed down and they went into the living room to talk, his behavior of kicking in two doors to pursue his ex-wife and removing her cell phone from her when she was contacting emergency services provides sufficient evidence from which a rational jury could have found provocation beyond a reasonable doubt. *See id.*

18

Accordingly, the trial court did not err by including this instruction in its charge to the jury. Appellant's fourteenth issue is overruled.

## F.    Closing Argument

In his fifteenth and final issue, appellant asserts that the trial court erred in overruling several objections to the State's closing argument. Specifically, he objected that the prosecutor's comments during closing regarding his failure to produce his medical records or expert testimony regarding whether he suffered from dissociative amnesia were prejudicial and shifted the burden of proof to the defense. However, the State may comment on a defendant's failure to produce evidence, as long as the remarks do not fault the defendant for exercising his right not to testify. *Jackson v. State*, 17 S.W.3d 664, 674 (Tex. Crim. App. 2000) (citing *Patrick v. State*, 906 S.W.2d 481, 491 (Tex. Crim. App. 1995) and *Livingston v. State*, 739 S.W.2d 311, 338 (Tex. Crim. App. 1987)). These comments did not fault appellant for not testifying, and in fact, appellant did testify in this case. Thus, appellant's fifteenth issue is without merit and is overruled.

## CONCLUSION

We have overruled each of appellant's fifteen issues. Accordingly, we affirm the trial court's judgment.


/s/     Adele Hedges
        Chief Justice


Panel consists of Chief Justice Hedges, Justice Christopher, and Judge Hill.[*]

Publish — Tex. R. App. P. 47.2(b).

---

[*] Hon. Belinda Hill, Judge, 230th District Court, Harris County, Texas, sitting by assignment pursuant to section 74.003(h) of the Government Code. *See* Tex. Gov't Code Ann. § 74.003(h) (West 2005).