**Affirmed and Memorandum Opinion filed February 5, 2019.**



In The

# Fourteenth Court of Appeals

### NO. 14-17-00590-CR

**MIGUEL ANGEL YEPEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1412836**

### M E M O R A N D U M   O P I N I O N

A jury convicted Miguel Angel Yepez of indecency with a child. The trial court sentenced him to fifteen years' confinement. On appeal, appellant challenges his conviction arguing: (1) the trial court abused its discretion by admitting certain outcry testimony; (2) the trial court abused its discretion by denying appellant's motion to redact the statements of "Rita"[1] and her mother from the medical records

---

[1] To protect the privacy of the minor complainant in this case, we identify her by a

offered into evidence by the State; (3) the trial court abused its discretion by admitting evidence of an alleged extraneous offense that was remote in time and not similar to the offense for which appellant was tried; and (4) the cumulative effect of the multiple errors rendered appellant's trial fundamentally unfair. We affirm.

## I. Background

During the 2010-2011 school year (August 2010 through May 2011) appellant was a second-grade teacher at an elementary school located in Houston, Texas. Rita, age 8, was a student in his class room. Rita's mother, Julieta, knew and trusted appellant because he had taught Rita's older brother. Thus, Julieta shared in confidence with appellant that Rita was going through a rough time because Julieta and Rita's father had divorced earlier in the year and Rita's father was not seeing her as often.

Mid-school year 2010-11, Rita developed a hygiene problem and began soiling her underwear. Rita also became withdrawn and sullen and began to have vaginal irritation. Julieta worked as a medical assistant for the county, and a doctor advised Julieta to check Rita's vaginal area to make sure it was clean. Thus, when Rita's underwear appeared soiled, Julieta helped Rita clean Rita's vagina and, when necessary, applied ointment to help with irritation. Rita's hygiene issues continued throughout second grade and into third grade.

After completing third grade in June 2012, Rita was almost ten years old and still having hygiene issues. On June 9, 2012, Rita had soiled her underwear. Julieta was in Rita's room to check and clean her vaginal area. While cleaning Rita, Julieta asked Rita if she had been touched. Rita paused; Julieta told Rita she could take her to a doctor and the doctor could tell Julieta if Rita had been touched. Rita

pseudonym—*i.e.*, Rita.

2

broke down crying, and then revealed to Julieta appellant had touched her multiple times during second grade. According to Rita, Rita would go up to appellant's desk during class and he reached under her clothing and touched her vagina through her underwear. Rita stated appellant touched her in this way in the classroom every day during second grade. Rita did not tell anyone that appellant touched her until she told Julieta on June 9, 2012.

Julieta telephoned her sister (Rita's aunt) and asked her to come over. They spoke to Rita. They asked Rita if anything went inside of her, and Rita said no. Rita demonstrated with a stuffed animal and said that appellant would put his hand on her private part, referring to her vaginal area.

Julieta and her sister went to the elementary school to see the principal. After advising the principal of what happened to Rita, Julieta perceived the principal as not caring, because he questioned Julieta and wanted to interview Rita. Julieta declined to bring Rita for an interview by either the principal or school police officers because Julieta believed the interview needed to be performed by a skilled professional. The principal told Julieta there was nothing they could do.

Next, they went to the storefront HPD police station on Shepherd. The officer made notes, but according to Julieta, no action was taken. They also took Rita to visit Dr. Rudolph Marin at Midtown Family Medicine. Julieta testified that she knew there were reporting requirements and she wanted confirmation that Rita had not been penetrated in her genitalia area. Dr. Marin examined Rita, but when a physical examination of her vagina was attempted, Rita "freaked out."

At Dr. Marin's recommendation, Julieta took Rita for counseling at DePelchin Children's Center. Rita received counseling at DePelchin for about a year.

3

Several months after reporting what had happened to Rita, law enforcement contacted Julieta and arranged to have Rita interviewed at the Children's Assessment Center.

On May 16, 2014, appellant was indicted for indecency with a child. Appellant pled not guilty, but a jury found him guilty as charged on July 13, 2017. The trial court assessed punishment at fifteen years' confinement. This appeal followed.

## II.     Analysis

Appellant challenges his conviction arguing four issues: (1) the trial court abused its discretion by admitting certain outcry testimony; (2) the trial court abused its discretion by denying appellant's motion to redact the statements of Rita and her mother from the medical records offered into evidence by the State; (3) the trial court abused its discretion by admitting evidence of an alleged extraneous offense that was remote in time and not similar to the offense for which appellant was tried; and (4) the cumulative effect of the multiple errors rendered appellant's trial fundamentally unfair.

### A.     Outcry testimony

In his first issue, appellant contends that the trial court abused its discretion by admitting outcry testimony of Rita's mother, Julieta.

#### 1.     Standard of review

We review a trial court's ruling to admit an outcry statement under article 38.072 for an abuse of discretion. *Nino v. State*, 223 S.W.3d 749, 752 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (citing *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990)). We will uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Weathered v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App.

4

2000); *Torres v. State*, 424 S.W.3d 245, 257 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd).

## 2. Article 38.072 exception to hearsay rule

Article 38.072, entitled "Hearsay Statement of Child Abuse Victims," provides a statutory exception to the hearsay rule[2] that allows the State to introduce outcry statements,[3] which would otherwise be considered inadmissible hearsay, made by a child victim of certain offenses, including the one at issue in this case *i.e.*, indecency with a child.[4] *See* Tex. Code Crim. Proc. art. 38.072; *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011). Under article 38.072, the trial court may admit the statements of a child victim describing the alleged offense through an "outcry witness," *i.e.*, the first adult to whom the child made a statement about the alleged offense. Tex. Code Crim. Proc. art. 38.072 § 2(a)(3). Before an outcry witness may testify, the State must notify timely the defendant of its intent to offer the evidence, provide the name of the outcry witness, and provide a summary of the statement. *See id*. § 2(b)(1).

"A statement that meets these requirements is not inadmissible because of the hearsay rule if, among other things, the trial court finds, in a hearing outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement." *Torres*, 424 S.W.3d at 257 (citing Tex. Code Crim. Proc. art. 38.072 § 2(b)(2)). Finally, the victim must either testify, or be available

---

[2] Hearsay is a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Tex. R. Evid. 801(d). Generally, hearsay statements are inadmissible unless permitted by statute or evidentiary rule. *See* Tex. R. Evid. 802, 803.

[3] "Though the terms do not appear in the statute, the victim's out-of-court statement is commonly known as an 'outcry,' and an adult who testifies about the outcry is commonly known as an 'outcry witness.'" *Sanchez*, 354 S.W.3d at 484.

[4] The offense of indecency with a child is found in Tex. Penal Code § 21.11(a).

to testify, "at the proceeding in court or in any other manner provided by law." *Sanchez*, 354 S.W.3d at 485 n.18 (citing Tex. Code Crim. Proc. art. 38.072 § 2(b)(3)).

When evaluating indicia of reliability, the trial court examines the time the child's statement was made to the outcry witness, the content of the child's statement, and the circumstances surrounding the making of that statement. *See Shaw v. State*, 329 S.W.3d 645, 652 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). Indicia of reliability that the trial court may consider include:

> (1) whether the child victim testifies at trial and admits making the out-of-court statement, (2) whether the child understands the need to tell the truth and has the ability to observe, recollect, and narrate, (3) whether other evidence corroborates the statement, (4) whether the child made the statement spontaneously in his own terminology or whether evidence exists of prior prompting or manipulation by adults, (5) whether the child's statement is clear and unambiguous and rises to the needed level of certainty, (6) whether the statement is consistent with other evidence, (7) whether the statement describes an event that a child of the victim's age could not be expected to fabricate, (8) whether the child behaves abnormally after the contact, (9) whether the child has a motive to fabricate the statement, (10) whether the child expects punishment because of reporting the conduct, and (11) whether the accused had the opportunity to commit the offense.

*Torres*, 424 S.W.3d at 257; *see also Buckley v. State*, 758 S.W.2d 339, 343–44 (Tex. App.—Texarkana 1988), *aff'd,* 786 S.W.2d 357 (Tex. Crim. App. 1990) ("*Buckley* factors").

"Thus, Article 38.072 is a rule of evidence admissibility, allowing trial courts to admit some hearsay statements in the prosecution of certain offenses against children when those statements are made under the specified conditions. This statute serves the societal interests of promoting the fair prosecution of child abuse cases and of protecting children in court by allowing the admission of their casual 'street

corner' confidences to an adult as a supplement to (or sometimes even a substitute for) what may be halting, incoherent, or traumatic in-court testimony." *Martinez v. State*, 178 S.W.3d 806, 811 (Tex. Crim. App. 2005).

### 3. Rita's outcry statement

Appellant argues that the State did not offer enough evidence at the outcry hearing to establish the statement's reliability beyond a reasonable doubt.

Assuming without deciding that the trial court erred in admitting Julieta's outcry testimony, we must determine whether the assumed error was harmful. *See* Tex. R. App. P. 44.2. The admission of inadmissible hearsay constitutes nonconstitutional error, and it will be considered harmless if, after examining the record as a whole, we are reasonably assured that the error did not influence the jury verdict or had but a slight effect. *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). Likewise, admission of inadmissible evidence is harmless error if other evidence that proves the same fact that the inadmissible evidence sought to prove is admitted without objection at trial. *Id*.; *see Zarco v. State*, 210 S.W.3d 816, 833 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Here, we cannot say, after examining the record as a whole, that allowing Julieta to testify about Rita's outcry improperly influenced the jury. Rita testified in detail about the abuse. She gave the same testimony Julieta gave regarding the abuse. There was no objection. Because the same evidence to which Julieta testified was admitted through Rita without objection, there is no harm. *See id*.

Appellant next attacks the admission of Rita's outcry testimony by asserting the "Court of Criminal Appeals has held the admission of a mother's testimony about her daughter's outcry to be an abuse of discretion." Appellant, citing *Martinez v. State*, asserts that this case has remarkably similar facts in that the trial court

7

erroneously admitted the hearsay testimony by Julieta as a victim outcry statement. *See Martinez*, 178 S.W.3d at 809–10. We disagree. The facts in *Martinez* are distinguishable from the case at bar because the victim in that case, at the time of the offense, was over the statutory age set forth in Article 38.072. *Id.* at 809. Thus, the court of appeals held that, while the outcry statements were inadmissible under article 38.072, they were admissible under Article 38.07.[5] *Id.* at 809-10. In this context, the Court of Criminal Appeals reviewed whether the outcry statements were admissible under article 38.07 or some other basis, and held they were not, but remanded the case back to the appeals court for a harmless error analysis. *See id*. at 812–16.

Here, the facts of this case are different because Rita was under the age of 14; her outcry statement to Julieta was admissible under Article 38.072 if the statement was properly determined to be reliable based on the time, content, and circumstances. Outside the presence of the jury, the trial court found the following:

> Before we bring the jury in, based on the testimony that the Court heard yesterday outside the presence of the jury and relative to the statement that the State wishes to offer from the mother, . . . statement purportedly made to her by the complainant in this case, [Rita], the Court finds, based on time, content and circumstances, the Court finds the statement to be reliable and relevant and the Court will permit the witness Mendoza to testify relative to the statements made to her by the complainant.

As such, *Martinez* does not operate as a bar to the admissibility of Rita's statement to Julieta. And, as mentioned, the statement's admission was harmless in any event.

---

[5] "While Article 38.072 assists the prosecution by making certain hearsay outcry statements admissible, Article 38.07 protects the accused by creating a statutory corroboration requirement. Its purpose is almost exactly opposite to that of Article 38.072: this is a defendant-protecting statute, rather than a child-victim-protecting statute." *Martinez*, 178 S.W.3d at 812.

8

Appellant further attacks the admissibility of Rita's outcry statement, asserting the outcry testimony is inadmissible because it exceeds the scope of article 38.072. According to appellant, Article 38.072 permits hearsay testimony only as to statements that describe the alleged offense but does not extend to make the identity of the alleged abuser admissible. As a prerequisite to presenting a complaint for appellate review, the record must show: (1) the party presented a timely request, motion, or objection to the trial court sufficient to make trial court aware of complaint; and (2) the trial court ruled or refused to rule, and the complaining party objected to the refusal. *See* Tex. R. App. P. 33.1(a). The record does not show that appellant made the trial court aware of his complaint regarding the outcry testimony as exceeding the scope of the statute. Accordingly, nothing is preserved for our review. *Priddy v. Rawson*, 282 S.W.3d 588, 597 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (holding appellants waived complaint because they did not expressly present the argument to the trial court).

Appellant's first issue is overruled.

## B.     Admission of unredacted medical records

In his second issue, appellant argues the trial court abused its discretion when it denied appellant's motion to redact the statements of Rita and Julieta from the medical records offered into evidence by the State. Specifically, appellant complains of records from Rita's pediatrician, Rudolph M. Marin, Jr., M.D., at Midtown Family Medicine, LLP (State's Exhibit 6) and medical records from Marcella Donaruma, M.D., with Harris County Children's Assessment Center ("CAC") (State's Exhibit 10).

We review a trial court's evidentiary ruling for an abuse of discretion. *Zavala v. State*, 401 S.W.3d 171, 176 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). We will uphold a trial court's evidentiary ruling if it is reasonably supported by the

9

record and correct on any applicable theory of law. *Id.* If we conclude the court erred, admission of the evidence at issue here would be considered non-constitutional error. *See Linney v. State*, 401 S.W.3d 764, 780 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (hearsay evidence). We disregard "[a]ny [non-constitutional] error, defect, irregularity, or variance that does not affect [an appellant's] substantial rights[.]" Tex. R. App. P. 44.2(b). Therefore, such error is harmless—and does not require reversal—if, after examining the record as a whole, "we are reasonably assured that the error did not influence the jury's verdict or had but a slight effect." *Linney*, 401 S.W.3d at 780.

### 1. The pediatrician's notes

Appellant maintains that the trial court erred in admitting State's Exhibit 6, which consists of a one-page report that details the sexual-abuse examination of Rita by Dr. Marin on June 20, 2013, as well as a six-page certification of health care provider form for medical leave. Appellant objected at trial that the examination was conducted to assist in the prosecution of the case, not for medical diagnosis. The trial court overruled the objection.

On June 20, 2013, shortly after Rita made her outcry statement to her mom, Julieta took Rita for an examination with Dr. Marin. The records contain the following handwritten notes, describing the purpose for the medical visit:

> Sore on 1:P [sic] pt states a teacher "touched" her inappropriately while in 2nd grade last year.

> Pt here [illegible] mother and aunt to discuss inappropriate touching by her 2nd grad[e] teacher (male) almost daily her 1st half of school year (approx. Fall 2010) would not happen during after school tutoring. No contact = him the school yr (3rd grade).

Additionally, the FMLA forms contained statements regarding Julieta's need for time off to provide emotional support and assistance with psychotherapy, as a

care giver to her daughter, Rita, who suffered from a serious health condition of "child abuse, sexual abuse."

Defense counsel objected that the records should be redacted because the statements of Rita and Julieta within the records were testimonial hearsay. The trial court denied this request on the basis that the records were made for the purpose of medical diagnosis, and thus were admissible as an exception to the hearsay rule. *See* Tex. R. Evid. 803(4).

In *Chapman*, this court concluded that the improper admission of outcry testimony was harmless when the same or similar information was admitted elsewhere at trial. *Chapman v. State*, 150 S.W.3d 809, 814–15 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). And, when the objected-to evidence describing the complainant's statement contained far less detail than the complainant's own testimony about the sexual abuse, this court held any error in the admission of outcry testimony was harmless. *Shaw v. State*, 329 S.W.3d 645, 653–54 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

Here, to the extent there was any error in the admission of State's Exhibit 6, Dr. Marin's notes contain a brief history, recording what Rita told him had happened. The FMLA forms mention sexual abuse but contain no details. The information contained in State's Exhibit 6 mirrors what Rita testified to at trial but contains less detail than what was admitted through the testimony of Rita and Julieta. On this record, we conclude that any error did not influence the verdict or had only a slight effect. *See Garcia*, 126 S.W.3d at 921; *see also Nino v. State*, 223 S.W.3d 749, 754 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (any error in the admission of the forensic interviewer's hearsay description of the complainant's outcry statement was harmless when the complainant and his mother each provided substantially the same account of the offense).

11

## 2. The assessment report

Appellant contends that the trial court erred in admitting State's Exhibit 10, which is a fifteen-page report that details the sexual-abuse examination of Rita by Dr. Marcella Donaruma on October 28, 2013. Appellant objected at trial that the assessment report was prepared to assist in the prosecution of the case, not for medical diagnosis. The trial court overruled the objection. We uphold that ruling.

Dr. Donaruma testified that she examined Rita in her capacity as a child-abuse pediatrician and the exam was necessary for medical diagnosis. The first page of the report indicates the reason for visit as "Sexual Abuse Exam." The initial three pages detail general information and Rita's medical history. The only substantive evidence in State's Exhibit 10 is a one-page transcript containing what Rita told Dr. Donaruma about the abuse. Dr. Donaruma read the transcript aloud during her testimony.

Dr. Donaruma testified about each step of the four-part medical evaluation. For example, the first part, the general questions, are, in part, "medical history and some of this is rapport building . . . She's a fifth grader, she makes As and Bs, she wants to be a teacher . . .." The second part, gathering a history of present illness, is the transcript wherein Rita told Dr. Donaruma about the abuse. For example, Dr. Donaruma asked Rita, "[w]hat brings you here today?" Rita responded, "I was in the second grade and my teacher would touch me there. His name is Mr. Yepes [sic]." Dr. Donaruma also testified all aspects of the physical examination had been deferred and that she encouraged counseling for Rita.

We conclude that the sexual-abuse examination performed by Dr. Donaruma was necessary for the purpose of medical diagnosis. *See, e.g., Beheler v. State*, 3 S.W.3d 182, 189 (Tex. App.—Fort Worth 1999, no pet.) ("The object of a sexual

assault exam is to ascertain whether the child has been sexually abused and to determine whether further medical attention is needed.").

Moreover, even though no physical examination was performed, Rita's statements made to Dr. Donaruma are admissible for medical diagnosis so long as the record demonstrates Rita understands the importance of being truthful with the medical practitioner involved to receive an accurate diagnosis and treatment. *See Taylor v. State*, 268 S.W.3d 571, 588–89 (Tex. Crim. App. 2008). To determine whether a child understood the importance of truthfulness when speaking to medical personnel, the reviewing court looks to the entire record. *See Green v. State*, 191 S.W.3d 888, 896 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). An express statement that the child understood the need to be truthful is not required. *Id*. Rather, as the Court of Criminal Appeals has stated, "it seems only natural to presume that . . . children of a sufficient age or apparent maturity will have an implicit awareness that the doctor's questions are designed to elicit accurate information and that veracity will serve their best interest." *Taylor*, 268 S.W.3d at 589.

Our review of the entire record supports a reasonable inference that Rita understood the need to be truthful when responding to Dr. Donaruma's questions. Lisa Holcombe, a forensic examiner at the CAC who interviewed Rita prior to the medical examination, testified that Rita knew the difference between the truth and a lie, and understood the importance of telling the truth when reporting sexual abuse. Rita's statements to                                    Dr. Donaruma were consistent with what she told Julieta and with her own testimony.

We conclude that the record supports an inference that the statements included in the assessment report were accurate and that Rita understood the need to be truthful in answering Dr. Donaruma's questions. *See Franklin v. State*, 459 S.W.3d 670, 677 (Tex. App.—Texarkana 2015, pet. ref'd) (concluding that a court can infer

13

from the record that a complainant "knew it was important to tell ... the truth in order to obtain medical treatment or diagnosis."); *see also Taylor*, 268 S.W.3d at 589 (presuming that children are implicitly aware that truthfully answering a doctor's questions will serve their best interests); *Green*, 191 S.W.3d at 896 (concluding that child's testimony that she knew the difference between  truth and lies, and doctor's testimony about procedure, supported finding that child understood need to be truthful).     As   such,   the   trial   court   did   not   abuse   its discretion in admitting State's Exhibit 10.

Having concluded the trial court did not err in admitting the assessment report, we need not engage in a harm analysis.  *See Sakil v. State*, 287 S.W.3d 23, 26 (Tex. Crim. App. 2009).

Appellant's second issue is overruled.

## C.    **Extraneous offense**

In his third issue, appellant argues that the trial court abused its discretion by improperly admitting testimony from R.C., who claimed that appellant molested her in 2002, when she was 11 or 12 years old.  Appellant was the boyfriend of R.C.'s sister at the time of the alleged abuse.  Appellant contends the trial court should have excluded the extraneous conduct evidence under Tex. R. Evid. 403.

Generally, the State cannot provide evidence of prior "crime[s], wrong [s], or other act[s]" to show that the defendant "acted in accordance with that character" or had a propensity to commit the crime. Tex. R. Evid. 404(b).  "In the context of sexual assault of a child, a different rule applies to recognize that '[t]he special circumstances surrounding the sexual assault of a child victim outweigh normal concerns associated with evidence of extraneous acts.'" *Alvarez v. State*, 491 S.W.3d 362, 367 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (quoting *Jenkins v. State*,

14

993 S.W.2d 133, 136 ((Tex. App.—Tyler 1999, pet. ref'd). Article 38.37 permits the State to provide evidence of other children whom the defendant has sexually assaulted "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." Tex. Code Crim. Proc. art. 38.37 § 2(b).

Before such evidence is admitted, however, the defendant is protected by "numerous procedural safeguards." *Harris v. State*, 475 S.W.3d 395, 402 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). First, the State must give the defendant 30 days' notice of its intent to introduce the evidence. Tex. Code Crim. Proc. art. 38.37 § 3. Second, the trial court must "conduct a hearing out of the jury's presence to determine that the evidence likely to be admitted will support a jury finding that the defendant committed the separate offense beyond a reasonable doubt." *Belcher v. State*, 474 S.W.3d 840, 847 (Tex. App.—Tyler 2015, no pet.). These procedural safeguards were satisfied here.

Relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice. Tex. R. Evid. 403. To analyze evidence under Rule 403, a trial court balances the following:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 636, 641–42 (Tex. Crim. App. 2006). Rule 403 analysis favors admissibility and presumes that relevant evidence will be more probative than prejudicial. *Buxton v. State*, 526 S.W.3d 666, 690 (Tex. App.—

Houston [1st Dist.] 2017, pet. denied).

The trial court conducted a hearing outside the presence of the jury. R.C. testified that fifteen years earlier, when she was 11 or 12 years old, her adult sister, Jennifer, was dating appellant. One evening, when R.C. was spending the night with Jennifer, R.C. and appellant went out to rent a movie. When R.C. got out of appellant's car, appellant kissed R.C., putting his tongue in her mouth. Appellant then held R.C.'s hand as they walked toward the movie rental store. Later that evening, R.C. testified that her sister's children fell asleep in the living room on the couch. Appellant, R.C. and her sister were in the bed watching the movie. Jennifer fell asleep during the movie. Appellant laid behind R.C. and began scratching her head. R.C. testified that appellant then reached his arm around, put his hand into her underwear, and touched her vagina. R.C. said she reacted by moving around a little bit, so appellant asked if she liked him touching her. R.C. responded that she did not and asked him to resume scratching her head. Appellant complied.

Appellant took the stand for the limited purpose of denying R.C.'s accusation.

At the end of the hearing, the trial court found that R.C.'s testimony was sufficient to support a finding beyond a reasonable doubt that the appellant committed the extraneous offense. The trial court went on to find that the evidence was relevant character evidence as it showed the appellant's attraction to young girls. Defense counsel objected to under Rule 403 that the danger of unfair prejudice from the extraneous act evidence substantially outweighed its probative value. The trial court admitted R.C.'s testimony, concluding as follows:

> The Court finds that the evidence proffered by the State is adequate to support a finding by the jury that the defendant committed a separate offense of indecency with a child with the witness who just testified, [R.C.]. The Court further finds that given the state of the evidence at this point where the defense has elicited testimony from one

16

of the witnesses on yesterday, that in the interview with the defendant in this case, that he denied the allegations which are the subject of the indictment in this case, so the Court will find that the separate offense, the extraneous offense, would be relevant to rebut the evidence introduced by the defendant. It would certainly be evidence that would be admissible as an extraneous offense for the jury to consider to rebut that testimony.

Additionally the Court finds that the evidence proffered by the State is relevant further as evidence of character as it relates to this defendant's relationship and propensity or his – I'm sorry. Not his propensity. His attraction to young children -- or young girls and that this evidence proffered by the State is an act that's performed in conformity with that and the Court will allow this evidence over objection of the defense.

Appellant argues that the extraneous offense is remote, dissimilar, and substantially outweighed by the danger of unfair prejudice. We disagree. Because evidence admitted under Article 38.37 can be used to prove action in conformity with character, courts have held that even old acts of child molestation are admissible in the face of a 403 objection. *See, e.g., Robisheaux v. State*, 483 S.W.3d 205, 218 (Tex. App.—Austin 2016, pet. ref'd) (holding admissible evidence of molestation that occurred twelve years before charged offense). A remote act is considered if it involves a similar act against a similar victim, because it constitutes evidence of the defendant's character and an act performed in conformity with that character. Further, the extraneous act is not dissimilar from the charged offense for which appellant was convicted. Appellant's molestation of R.C. was similar to the indecency with Rita. Both offenses involved the appellant in a room with other people, sticking his hand down the pants of a pre-pubescent girl, and touching her vagina. As the trial court found, those acts are similar enough to allow the sort of character-conformity inference Article 38.37 allows.

While in most cases, the above-described inference is impermissible, here, as in other child molestation cases, the inference is permissible and Article 38.37

17

expressly allows it. Moreover, trial courts are afforded deference regarding Rule 403 objections. *Robisheaux*, 483 S.W.3d at 218. Here, additional relevant factors support the trial court's ruling, including the evidence's probative value and the proponent's need for it. Without R.C.'s testimony, appellant could have argued more forcefully that this case was simply one of "he-said, she-said." By allowing R.C. to testify, the jury was able to assess Rita's accusations considering appellant's character for attraction to young girls. *See Alvarez*, 491 S.W.3d at 372 (pointing out the importance of Article 38.37 evidence when State's only evidence of guilt is complainant's testimony).

In sum, the trial court did not abuse its discretion in overruling appellant's Rule 403 objection.

Appellant's third issue is overruled.

## D. Cumulative effect of multiple errors

In his fourth issue, appellant maintains that the cumulative effect of the multiple errors he asserts occurred rendered appellant's trial fundamentally unfair.

A number of errors, even if harmless when separately considered, may be harmful in their cumulative effect. *See Linney*, 401 S.W.3d at 782 (citing *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) (citing *Stahl v. State*, 749 S.W.2d 826, 832 (Tex. Crim. App. 1988)); *Melancon v. State*, 66 S.W.3d 375, 385 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (en banc)). Non-errors, however, may not produce harm in their cumulative effect. *Hughes v. State*, 24 S.W.3d 833, 844 (Tex. Crim. App. 2000); *Melancon*, 66 S.W.3d at 385. This doctrine provides relief only if the cumulative effect rendered this phase of the trial fundamentally unfair. *See Estrada v. State*, 313 S.W.3d 274, 311 (Tex. Crim. App. 2010) (citing *United States v. Bell*, 367 F.3d 452, 471 (5th Cir. 2004)).

As explained above, the trial court did not err in the particulars appellant claims.  To the extent we have assumed the trial court committed one evidentiary error, we have held it harmless, and appellant has not demonstrated that the trial court abused its discretion in any other respects.   Thus, appellant has not demonstrated "cumulative harm" resulting in a fundamentally unfair trial.

Appellant's fourth issue is overruled.

### III.    Conclusion

Having overruled appellant's issues, we affirm the trial court's judgment.

/s/    Margaret "Meg" Poissant
Justice

Panel consists of Justices Wise, Jewell, and Poissant.
Do Not Publish —Tex. R. App. P. 47.2(b).