

# IN THE
# TENTH COURT OF APPEALS

### No. 10-15-00175-CR

**AMY MIGNON REESE,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 40th District Court**
**Ellis County, Texas**
**Trial Court No. 37707CR**

## MEMORANDUM OPINION

Appellant Amy Mignon Reese pleaded guilty to murder, and a jury assessed her punishment at life imprisonment. This appeal ensued.

**Discharge and Replacement of Selected Juror**

In her first issue, Reese contends that the trial court abused its discretion when it discharged a juror and seated an alternate juror without an adequate showing of disability.

After counsel for both the State and Reese had completed their general voir dire examinations of the prospective jurors, they began discussions with the trial court outside the presence of the panel about challenges for cause. The State challenged Prospective Juror No. 15, Mr. Valentino, for cause, stating that "[h]e indicated that he needs all doubt eliminated." The trial court therefore brought forward Mr. Valentino for individual questioning, during which the following exchange occurred:

> THE COURT: Mr. Valentino, thank you for coming forward.
>
> PROSPECTIVE JUROR: Yeah.
>
> THE COURT: After being here at our proceeding all day, we're going to circle around back to something earlier this morning dealing with the burden of proof.
>
> PROSPECTIVE JUROR: Uh-huh.
>
> THE COURT: A few questions. There's no right or wrong answers. We just want to know how you honestly feel. State may proceed.
>
> PROSPECTIVE JUROR: Sure. Sure.
>
> [PROSECUTOR]: We were talking about the burden of proof. [Co-counsel] was asking you earlier in the day about burden of proof in a criminal case being beyond a reasonable doubt.
>
> PROSPECTIVE JUROR: Uh-huh. Uh-huh.
>
> [PROSECUTOR]: And I think you had answered at one point that you need all doubt eliminated in order to return a guilty verdict.
>
> PROSPECTIVE JUROR: Yeah. Yeah. I've been thinking on that all day based on the fact she said we'd talk to you about it later. So I believe in the system, of course. I believe beyond a reasonable doubt and I'll follow those policies and what have you. But in this particular case, I felt like I

would need something stronger or potentially need to see more. After hearing both sides, I'm comfortable with -- with the not necessarily 100 percent.

[PROSECUTOR]: Okay. So you've changed your mind? Is that what you're saying?

PROSPECTIVE JUROR: Yeah. I've been tossing it around all day because of I could see -- I hope I'm free to say -- I could see necessarily some self-defense and some things in that particular realm, especially if children were involved. And I was -- I wasn't sure about -- I was confused completely on how I would go and I kind of stressed on that in terms of how I would decide.

[PROSECUTOR]: And to be clear, we're not asking you right now how would you go.

PROSPECTIVE JUROR: Right. Okay.

[PROSECUTOR]: I mean, it's been explained the presumption of innocence that if we asked you right now how you would go your answer would be innocent. But what we're asking you is are you holding the State to a higher burden than beyond a reasonable doubt.

PROSPECTIVE JUROR: No.

[PROSECUTOR]: Okay.

THE COURT: I want to be clear then, Mr. Valentino. If the State proves each and every element of the offense charged beyond a reasonable doubt, you can and will return a verdict of guilty?

PROSPECTIVE JUROR: Yes.

Mr. Valentino was subsequently seated as Juror No. 5, and the selected jurors, as well as

two alternate jurors, were released for the day without swearing in the jury.

Before leaving, Mr. Valentino asked to speak with the trial court. Outside the presence of the other selected jurors, the following exchange took place:

> PROSPECTIVE JUROR: When I came in earlier, I was feeling quite a bit of stress in regards to holding somebody's --
>
> THE COURT: Yes.
>
> PROSPECTIVE JUROR: -- life in my hand, and just being called just elevated that. I don't know. I thought I said it when I was in here that I'm torn. I think I can -- I can hear the facts and do a -- and be unbiased, but it kind of hit me right there when we got called.
>
> So I apologize to the Court for -- I thought that I had stressed that earlier but I don't know what I -- how to handle that, what to do.
>
> THE COURT: Very good. Mr. Valentino, I believe both sides believe that you can be fair and impartial and that you will return a true verdict based upon the law and the evidence in this case.
>
> We appreciate you sharing these concerns with us. At this point, though, I believe we're good to go and we'll go forward. Thank you so much, sir.

Once Mr. Valentino left the courtroom, counsel for the State asked the trial court if Mr. Valentino was trying to tell the court that he could not reach a verdict. Reese's counsel responded that Mr. Valentino was just "nervous" and "taking it seriously." The prosecutor stated, "I just feel like he was highly agitated and trying to make his point saying he's being very clear about something while not being clear at all." The prosecutor asked the trial court to clarify what the court's understanding was. The trial court stated, "My belief is . . . that the reality of serving on a jury and the enormous responsibility hit home. And he was expressing some thoughts on his mind." The prosecutor requested

that the trial court ask additional questions of Mr. Valentino.  The trial court, however,

stated that Mr. Valentino was "probably gone" and concluded:

> And so why don't we recircle, take the matter up tomorrow?  Maybe he'll
> feel a lot more comfortable with a good night's sleep.  The attorney can talk
> about it with co-counsel, talk about it with each other, bring it to the Trial
> Court's attention.  I think we just want to be real careful about the types of
> questions and the forms of questions.  But if counsel feels it appropriate,
> we'll consider making inquiry tomorrow.

The following morning, outside the presence of the other selected jurors, the trial

court asked Mr. Valentino additional questions as follows:

> THE COURT:  . . . .
>
> . . . What comes next in the jury trial process is for me to bring in all
> the members of the jury here in open court and I am going to administer an
> oath to the jury.  After conferring with the attorneys we thought it would
> be a good idea to bring you in alone.  I'm going to tell you what the oath is.
>
> If you have any questions about the oath you can ask, but I'm going
> to tell you what the oath is and then I'm going to ask you whether or not
> you will be able to take this oath.  If you can, that's great.  If you can't, that's
> fine too.  I need a firm yes or a firm no.
>
> The oath, according to the Code of Criminal Procedure is as follows:
> Do you and each of you do solemnly swear that in the case of the State of
> Texas against the defendant you will a true verdict render according to the
> law and the evidence so help you God.  Mr. Valentino, can you take that
> oath?
>
> JUROR:  No, sir.
>
> THE COURT:  Why is that, please?
>
> JUROR:  The stress of the situation, I'm afraid I'm going to not be
> able to consider the law given the circumstances after thinking about it all

night.  The stress is overwhelming in terms of certain things that are involved.

      THE COURT:  Are you telling us that you will not be able to return a true verdict in this case  --

      JUROR:  I don't think I'd be able to  --

      THE COURT:  -- according to the law and the evidence?

      JUROR:  I don't think I'd be able to given the  --  given the line of questioning yesterday.

      THE COURT:  Is that a firm no?

      JUROR:  Firm no.

Outside Mr. Valentino's presence, the trial court asked the attorneys if they wanted the trial court to ask any further questions.  Counsel for both the State and Reese replied that they did not.  The trial court then ruled that it was releasing and excusing Mr. Valentino from the jury, "noting, of course, that he has not yet been sworn in as a juror."  The following exchange then took place:

      [DEFENSE COUNSEL]:  . . . For the record, Judge, only, we object to releasing Mr. Valentino.  I understand the Court's reasoning, but on behalf of my client I would say that he was chosen.  I've been here and I've heard him.  I understand, but I've got to protect what I've got to protect, and so we would object to his being removed from the jury and an alternate being allowed to serve.

      THE COURT:  I understand.

      [PROSECUTOR]:  Judge, may I state for the record, too?

      THE COURT:  Please.

[PROSECUTOR]: For the record, the Trial Court had proposed this plan of action to both attorneys. . . . [T]he defense attorney, agreed with the Court's plan of action for questioning this juror.

THE COURT: As we just did.

[PROSECUTOR]: As we just did. So this part was planned and un-objected to. And then I could see Mr. Valentino's right side of his face when he was talking to the Court and there was a tear coming out of his right eye going down to his cheek, and while he was speaking he was definitely trying to control his breath. You could tell his heart was racing and that he was having, you know, difficulty expressing himself even today because of his overwhelming emotions. And I think that's all I have for the record.

[DEFENSE COUNSEL]: Everything the State has said is true, Your Honor. Personally, I don't disagree, but professionally I had to do what -- I had to say what I had to say.

THE COURT: I understand. Given all the circumstances, Trial Court finds that together we have taken the most responsible course of legal action under Texas law. The defense's objection is respectfully denied. And as I mentioned, [Mr.] Valentino is released and excused from the jury. . . .

Therefore, alternate juror number one . . . now becomes part of the regular jury, so to speak.

Reese argues that the trial court abused its discretion in replacing Mr. Valentino because he was neither disabled nor unable to proceed as contemplated by articles 36.29(a) and 33.011(b) of the Code of Criminal Procedure. Reese asserts that, instead, "this was a classic example of a 'vacillating' venireman." Reese further argues that "the trial court abused its discretion in dismissing the juror too quickly from his duty prior to making an appropriate detailed inquiry."

First, to preserve a complaint for review, the complaining party must make a timely, specific objection at the earliest possible opportunity and obtain an adverse ruling from the trial court. TEX. R. APP. P. 33.1(a); *Dixon v. State*, 2 S.W.3d 263, 265 (Tex. Crim. App. 1998). The issue raised on appeal must then correspond to the objection made at trial. *Dixon*, 2 S.W.3d at 265. Furthermore, a party cannot take advantage of an error that it invited or caused. *Woodall v. State*, 336 S.W.3d 634, 644 (Tex. Crim. App. 2011).

Before Mr. Valentino was released, the trial court asked counsel for both the State and Reese whether they wanted the trial court to ask any further questions. Both the prosecutor and Reese's counsel replied that they did not. After the trial court released and excused Mr. Valentino, Reese's counsel objected to Mr. Valentino being removed from the jury and to an alternate being allowed to serve, stating "I would say that [Mr. Valentino] was chosen." Reese's counsel made no complaint to the trial court that it failed to make an appropriate inquiry of Mr. Valentino. In fact, the prosecutor stated that Reese's counsel had agreed with the trial court's plan of action for questioning Mr. Valentino, and Reese's counsel responded that everything the prosecutor said was true.

Any complaint Reese raises in this appeal that the trial court abused its discretion by releasing Mr. Valentino before making an "appropriate detailed inquiry," therefore, does not correspond to the objection made at trial, and the error, if any, was invited by Reese's counsel. We thus conclude that Reese did not preserve her first issue for review to the extent that she complains that the trial court abused its discretion by releasing Mr.

Valentino before making an "appropriate detailed inquiry." *See id.*; *Dixon*, 2 S.W.3d at 265.

We next turn to the portion of Reese's first issue in which she argues that the trial court abused its discretion in replacing Mr. Valentino because he was neither disabled nor unable to proceed as contemplated by articles 36.29(a) and 33.011(b) of the Code of Criminal Procedure.

Article 36.29(a) of the Code of Criminal Procedure states, "Not less than twelve jurors can render and return a verdict in a felony case." TEX. CODE CRIM. PROC. ANN. art. 36.29(a) (West Supp. 2016). It nevertheless also provides that "after the trial of any felony case begins and a juror dies or, as determined by the judge, becomes disabled from sitting at any time before the charge of the court is read to the jury, the remainder of the jury shall have the power to render the verdict." *Id.* On the other hand, under article 33.011(a) of the Code of Criminal Procedure, district court judges "may direct that not more than four jurors in addition to the regular jury be called and impaneled to sit as alternate jurors." *Id.* art. 33.011(a) (West Supp. 2016). And article 33.011(b) provides:

> Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury renders a verdict on the guilt or innocence of the defendant and, if applicable, the amount of punishment, become or are found to be unable or disqualified to perform their duties. . . .

*Id.* art. 33.011(b).

Article 36.29, however, does not apply if the jury has been selected, but not sworn. *Broussard v. State*, 910 S.W.2d 952, 957 (Tex. Crim. App. 1995). And here, although the

jury had been selected, it had not been sworn. The trial court recognized this fact by stating that Mr. Valentino had not been sworn in as a juror. The trial court then either impliedly reconsidered and granted the State's challenge of Mr. Valentino for cause from the day before or *sua sponte* excused Mr. Valentino because he was subject to a challenge for cause. And either way, Reese's first issue fails.

When a prospective juror's answers are vacillating, unclear, or contradictory, we defer to the trial court's decision on a challenge for cause. *Zavala v. State*, 401 S.W.3d 171, 174 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (citing *Segundo v. State*, 270 S.W.3d 79, 93 (Tex. Crim. App. 2008)). As recognized by Reese in her brief, Mr. Valentino's answers were vacillating, unclear, and contradictory. At one point, Mr. Valentino stated that he would not hold the State to a higher burden than beyond a reasonable doubt, but, the next day, he stated that he would not be able to take the oath of a juror because he was afraid that he was not going to be able to consider the law given the circumstances. Accordingly, we defer to the trial judge, who was in the best position to determine whether Mr. Valentino could follow the applicable law. *See Segundo*, 270 S.W.3d at 93-94. Thus, the trial court did not abuse its discretion to the extent it impliedly reconsidered and granted the State's challenge of Mr. Valentino for cause.

The trial court erred, however, to the extent the trial court *sua sponte* excused Mr. Valentino because he was subject to a challenge for cause. The trial court should not on its own motion excuse a prospective juror for cause unless the juror is absolutely

disqualified from serving on the jury. *Warren v. State*, 768 S.W.2d 300, 303 (Tex. Crim. App. 1989). There are only three absolute disqualifications: (1) the juror has been convicted of misdemeanor theft or a felony; (2) the juror is under indictment or other legal accusation for misdemeanor theft or a felony; or (3) the juror is insane. *Id.*; *see* TEX. CODE CRIM. PROC. ANN. arts. 35.16(a), 35.19 (West 2006). None of these absolute disqualifications applied to Mr. Valentino. But Reese did not object based on the trial court's excusing Mr. Valentino on its own motion. Thus, Reese did not preserve a complaint about the trial court excusing Mr. Valentino *sua sponte*. *See Warren*, 768 S.W.2d at 303 (stating that, to preserve complaint and establish harm, defendant must (1) object to *sua sponte* excusal of juror; (2) at conclusion of voir dire, claim he is to be tried to jury to which he has legitimate objection; (3) specifically identify juror or jurors he is complaining about; and (4) exhaust all his peremptory challenges and request additional peremptory challenges).

For these reasons, we overrule Reese's first issue.

## Modification of Judgment

In her second issue, Reese contends that the judgment should be modified to reflect the place of confinement as the "Texas Department of Criminal Justice—Institutional Division." Reese cites no authority mandating that such information be included in the judgment. And the convicted person's place of confinement is not included in the statutory list of items that must be included in a judgment. *See* TEX. CODE

CRIM. PROC. ANN. art. 42.01, § 1 (West Supp. 2016). We therefore overrule Reese's second

issue. *See Attaway v. State*, No. 07-15-00261-CR, 2016 WL 300947, at \*2 (Tex. App.—

Amarillo Jan. 7, 2016, no pet.) (mem. op., not designated for publication).

Having overruled both of Reese's issues, we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed December 28, 2016
Do not publish
[CRPM]

