Scott Mattison LAWSON, Appellant,

v.

The STATE of Texas.

No. 1767–00.

Court of Criminal Appeals of Texas.

Dec. 5, 2001.

C.R. Daffern, Amarillo, for Appellant.

Jim English, Asst. DA, Hereford, Matthew Paul, State's Atty., Austin, for State.

## OPINION

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., WOMACK, KEASLER, HOLCOMB, and COCHRAN, J.J., joined.

Appellant was convicted of murder pursuant to the felony murder doctrine embodied in Texas Penal Code, Section 19.02(b)(3). That section provides that a person is guilty of murder if he causes the death of another during the commission of a felony, other than manslaughter. The instant indictment alleged that appellant killed the victim while committing an "intentional and knowing" aggravated assault of that individual.

Appellant claimed on direct appeal that he could not be prosecuted for murder under Section 19.02(b)(3) because the aggravated assault was the same act that killed the victim. The Court of Appeals, on direct appeal and again on remand from this Court for reconsideration in light of our decision in *Johnson v. State*, rejected this claim. *Lawson v. State*, 26 S.W.3d 920, 921–22 (Tex.App.—Amarillo 2000, pet. granted); *see also Johnson v. State*, 4 S.W.3d 254 (Tex.Cr.App.1999). We exercised our discretionary authority to review this decision.

In *Johnson v. State*, we limited this Court's decision in *Garrett v. State*, which held that "there must be a showing of felonious criminal conduct other than the assault causing the homicide" to support a murder conviction under the felony mur-

der rule. *See Johnson*, 4 S.W.3d at 258; *Garrett v. State*, 573 S.W.2d 543, 546 (Tex. Cr.App. [panel op.] 1978). Thus, *Johnson* restricted *Garrett* to "hereinafter [stand] only for the proposition that a conviction for felony murder under section 19.02(b)(3), will not lie when the underlying felony is manslaughter or a lesser included offense of manslaughter." *See Johnson*, 4 S.W.3d at 258. We will follow *Johnson*.

Applying *Johnson*, the issue here is whether an "intentional and knowing" aggravated assault is a lesser included offense of manslaughter. Manslaughter is defined as recklessly causing an individual's death. *See* Section 19.04, Texas Penal Code. The statutory underlying felony with which appellant was charged is an "intentional and knowing" aggravated assault. *See* Sections 22.01(a)(1) & 22.02(a)(1), Texas Penal Code, (defining the offense of aggravated assault). An "intentional and knowing" aggravated assault is not a lesser included offense of manslaughter, nor is it statutorily includable in manslaughter. *See Johnson*, 4 S.W.3d at 258; *Garrett*, 573 S.W.2d at 546.

The judgment of the Court of Appeals is, therefore, affirmed.

COCHRAN, J., filed a concurring opinion in which KELLER, P.J., KEASLER and Holcomb, J.J., joined.

MEYERS, J., filed a dissenting opinion in which PRICE and JOHNSON, J.J., joined. JOHNSON, J., filed a dissenting opinion in which MEYERS, J., joined.

COCHRAN, J., filed a concurring opinion in which, KELLER, PJ., KEASLER and HOLCOMB, JJ., joined.

I join the majority opinion. I write separately to provide an additional rationale for our decision and to review the historical purpose of the felony murder rule in hopes of assisting the bench and bar in analyzing the application of this doctrine.

The felony murder rule developed under early common law. It holds that a person whose conduct causes an unintended death during the commission or attempted commission of a felony is guilty of murder.[1] Thus, if a robber points a gun at the bank teller and the gun "accidentally" discharges, killing the bank teller, then the bank robber is guilty of murder. It matters not whether the robber intended to shoot or whether he intended to kill.[2] Train robbers who force a brakeman to serve as their shield and take them to the express car are guilty of murder when a passenger, hoping to foil the robbery, shoots and kills the brakeman.[3] Under common law, one who commits arson may be found guilty of the murder of a person who died inside the house or by fighting the fire even though the arsonist did not intend to cause any personal injury by his act.[4]

---

1. *See* Hall, General Principles of Criminal Law 129 et seq. (2d ed.1960); Perkins & Boyce, Criminal Law 61–72 (3d ed.1982); LaFave & Scott, Criminal Law § 7.5 (2d ed.1986); Crum, *Causal Relations and the Felony Murder Rule*, 1952 Wash. U.L.Q. 191.

2. *See, e.g., Davis v. State*, 597 S.W.2d 358, 361 (Tex.Crim.App.), *cert. denied*, 449 U.S. 976, 101 S.Ct. 388, 66 L.Ed.2d 238 (1980) ("Where the defendant intends to commit a robbery and actually does so, the shooting of the vic-

tim, even though accidental, it is still an unlawful killing").

3. *Keaton v. State*, 41 Tex.Crim. 621, 633, 57 S.W. 1125, 1129 (1900).

4. *See id.(citing Reddick v. Comm.*, 17 Ky. L.Rptr. 1020, 33 S.W. 416 (1895) (one who commits arson may be found guilty of murder of woman who died in burning building)). This court reaffirmed that common law principle in *Murphy v. State*, 665 S.W.2d 116, 119 (Tex.Crim.App.1983) (defendant who commit-

In contrast, the offense of manslaughter is never felony murder, for obvious reasons.[5] Involuntary manslaughter is, by definition, an accidental homicide, committed with recklessness. If involuntary manslaughter could form the basis of a felony murder prosecution, each and every such recklessly caused death would constitute felony murder. The offense of involuntary manslaughter would be swallowed up by the felony murder rule. Voluntary manslaughter is also always exempt from the felony murder doctrine because it is illogical to assign a lesser punishment for an actor who commits a murder in the "heat of passion," but then turn around and bump the crime back up to murder under the felony murder doctrine.[6]

The principle behind the common law felony murder rule is this: When you embark upon an inherently dangerous criminal project, you are responsible for the deadly consequences that result from that felonious conduct.[7] The doctrine originally applied to all felonies or those crimes denominated as *malum in se*.[8] Because virtually all crimes in 18th and 19th century England were classified as felonies, the rule became intolerably overbroad and harsh in its consequences. As one English judge put it in 1887: "it was said that if a man shot at a fowl with intent to steal it, and accidentally killed a man, he was to be accounted guilty of murder, because the act was done in the commission of a felony. I very much doubt, however, whether this is really the law ..."[9]

If it ever had been English law that a chicken thief who accidentally killed a person in the course of stealing the fowl is guilty of murder, that law quickly changed. The common law rule was narrowed to this: a homicide resulting from any felony committed in a dangerous or violent way, is murder.[10]

In the United States, courts and legislatures have narrowed the original (and

---

ted arson to collect insurance proceeds could be convicted of murder when person died as a result of setting the fire).

**5.** *See LaFave & Scott,* § 7.5(g) (if felony murder doctrine applied to reckless homicides, "manslaughter has ceased to exist as a separate crime; all manslaughters ride up an escalator to become felony-murders").

**6.** *See* Perkins & Boyce at 69 ("It would be futile to recognize the sudden heat of passion, engendered by great provocation, as sufficiently mitigating to reduce a voluntary homicide to manslaughter, if in the next breath it was added that manslaughter is a dangerous felony and hence homicide resulting from such an attempt must be murder").

**7.** *See* 4 Blackstone, Commentaries *200–201.

**8.** *See* Perkins at 62.

**9.** *Regina v. Serne,* 16 Cox C.C. 311, 312–13 (1887). The discussion in *Serne* is based upon the henhouse homicide hypothetical posed by Justice Holmes in The Common Law 58 (1881). Justice Holmes stated: "If the object of the [felony murder] rule is to prevent such accidents [as the henhouse homicide], it should make accidental killing with firearms murder, not accidental killing in the effort to steal; while if its object is to prevent stealing, it would do better to hang one thief in every thousand by lot." *Id.*

**10.** *See Regina v. Whitmarch,* 62 Just.P. 711 (1898) ("If a man by the perpetration of a felonious act brings about the death of a fellow creature he is guilty of murder, unless when he committed the felonious act the chance of death resulting therefrom was so remote that no reasonable man would have taken it into consideration. In that case he is not guilty of murder, but only of manslaughter"); *Rex. v. Jarmain,* 2 All E.R. 613, 616 (1945) (stating felony murder rule as: "he who uses violent measures in the commission of a felony does so at his own risk and is guilty of murder if those violent measures result, even inadvertently, in the death of the victim").

England statutorily abolished the felony murder rule by the Homicide Act of 1957.

overbroad) felony murder doctrine in various ways, including one or more of the following: [11]

1) by limiting its application to certain enumerated felonies which are inherently dangerous; [12]

2) by imposing stricter criteria for determining whether the fatal act created a foreseeable risk to human life; [13]

3) by imposing a stricter standard for the time that may elapse between the felony's commission and the victim's death; [14] or

4) by requiring that the underlying felony be independent from the conduct which causes the death. [15]

The Texas Legislature chose to narrow the common law felony murder rule set out in section 19.02(b)(3) of the Penal Code in two distinct ways. First, the statute requires that, regardless of the specific underlying felony (always excepting manslaughter, of course), the defendant must commit an act that is "clearly dangerous to human life." Instead of simply enumerating specific felonies which, in the abstract, are usually dangerous, the Legislature required that the state prove that this specific actor, under these specific circumstances, did some act that was clearly dangerous. This limitation preserves the original justification for the felony murder rule—a person is criminally responsible for the consequences of his dangerous and violent criminal conduct—while protecting the defendant against prosecution for murder for an unforeseeable death which occurs during the commission of a felony which is violent in the abstract, but not in the particular case. [16] Second, the Legislature narrowed the proximate cause relationship in the felony murder rule. Not

11. *See generally* LaFave & Scott § 7.5 at 622.

12. *See, e.g.,* Model Penal Code § 210.2(1)(b) (criminal homicide constitutes murder when "it is committed recklessly under circumstances manifesting extreme indifference to the value of human life"; applying a presumption of recklessness and indifference when actor commits robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary, kidnapping, or felonious escape).

13. This proximate cause limitation focuses on whether the conduct and circumstances in the particular case created a foreseeable risk to human life. *See, e.g., Wade v. State,* 581 P.2d 914 (Okla.Crim.App.1978) (to invoke felony murder doctrine it is sufficient that underlying felony is "potentially dangerous in light of the facts and circumstances surrounding both the felony and the homicide"); *Jenkins v. State,* 230 A.2d 262 (Del.1967) (when underlying felony was burglary of a building, felony murder rule applies only when actor's conduct was "foreseeably dangerous to human life" and depends "upon whether someone may be reasonably expected to be present in the building, and upon other circumstances of the case");

14. *See generally,* LaFave & Scott, § 7.5 (discussing required temporal, as well as causal, connection between underlying felony and person's death); *see, e.g., Doane v. Commonwealth,* 218 Va. 500, 237 S.E.2d 797 (1977) (defendant who ran stop sign and killed pedestrian while driving car he had stolen day before could not be convicted of felony murder).

15. *See People v. Wilson,* 1 Cal.3d 431, 82 Cal.Rptr. 494, 462 P.2d 22 (1969) (stating that under felony murder rule, it is essential that the actor was engaged in some other felony, so distinct "as not to be an ingredient of the homicide" itself).

16. For example, suppose that the actor is committing a bank robbery. He hands the bank teller a note saying, "Your money or your life." He has no gun or other weapon, only the threatening note. The bank teller keels over and dies of a heart attack. Robbery is a violent and dangerous felony in the abstract, but not in this instance. Here, the actor did not commit an act that was "clearly dangerous to human life," yet his act of presenting a threatening note may well have caused the teller's heart attack and death.

only must the defendant commit an act that is clearly dangerous to human life, it must also be that specific act which causes the victim's death. The State must prove that *but for* the dangerous act, the deceased would not have died.[17] The death must be the natural and probable consequence of the defendant's dangerous conduct.[18]

Despite these two explicit legislative limitations, this Court imposed another, non-statutory, restriction on the felony murder rule. This extra limitation was the "merger" doctrine, announced in *Garrett v. State*,[19] which held that the actor's conduct constituting the underlying felony must be separate and distinct from the "clearly dangerous" act which causes the person's death. In *Garrett,* the defendant initiated a fight with a store clerk, pulled a gun to scare him, and the gun "went off," killing the clerk. Garrett was charged with felony murder, with the underlying felony being aggravated assault. This Court held that "[t]here must be a showing of felonious criminal conduct other than the assault causing the homicide."[20] There is not and never was any such requirement in section 19.02(b)(3), nor was there any such requirement at common law. Under modern common law, "[h]omicide is murder if the death results from the perpetration or attempted perpetration of an inherently dangerous felony."[21] Aggravated assault is surely an inherently dangerous felony. Even if a felony assault were not inherently dangerous in a specific case under specific circumstances, the Texas Legislature restricted the application of the doctrine to those particular instances in which the actor committed an act clearly dangerous to human life which caused the death of a person.

The concern in *Garrett* was that every aggravated assault that resulted in a death would then be subject to prosecution as a murder. True enough, if the actor commits an act clearly dangerous to human life which causes the person's death. That is precisely the rationale of the felony murder rule. But unlike involuntary manslaughter, not every aggravated assault results in death. If manslaughter could constitute the underlying felony in a felony murder, then every single manslaughter case would be automatically upped to felony murder. The offense of manslaughter itself would be obviated. That is neither logical nor legal.[22] But not every instance

---

17. That requirement should not be over applied, however. It does not mean that the death must result from any *intentional* dangerous conduct, merely that the act itself was, by any reasonable estimation, clearly dangerous. The culpable *mens rea* is supplied by the commission of the underlying felony with its accompanying mental state of intention, knowledge, or recklessness.

18. *See generally,* LaFave and Scott § 7.5(b) (discussing proximate or legal cause limitation on felony murder rule).

19. 573 S.W.2d 543 (Tex.Crim.App.1978).

20. *Garrett,* 573 S.W.2d at 546. This is called the "merger doctrine" and is thoroughly discussed in *Johnson v. State,* 4 S.W.3d 254, 255–58 (Tex.Crim.App.1999). In *Johnson,* this Court noted that the "merger doctrine"

set out in *Garrett* would prohibit conviction for felony murder unless the defendant had committed an underlying felony plus an additional act (other than the conduct covered by the underlying felony) that was clearly dangerous to human life. *Id.* at 256. Eight members of this Court explicitly rejected such a broad rule in *Johnson. Id.* Instead, the Court held that a felony murder conviction could be based upon the underlying felony of injury to a child without proof of any additional dangerous act beyond that covered by the underlying felony. *Id.* at 258.

21. Perkins & Boyce, at 70.

22. It is precisely for this reason that the Texas Legislature explicitly exempted the felony of manslaughter from the definition of felony murder under section 19.02(b)(3).

of aggravated assault, injury to a child, criminal mischief, etc. ends in death. Not every instance of these offenses is the result of an act that is clearly dangerous to human life. Not every instance of these offenses would automatically be upped to felony murder. Use of these offenses as the basis of a felony murder prosecution do not pose the same logical and legal problem of merger that involuntary manslaughter has always been recognized, both at common law and in felony murder statutes, as posing.

Certainly one legitimate way to limit the overbroad old common law felony murder rule is to require the commission of some felony, any felony except manslaughter, *plus* an additional violent or dangerous act which causes the death.[23] However, the Texas Legislature did not choose this method. It chose to limit the felony murder rule by two alternate restrictions. It had both the power and authority to do so. This Court might have the power, but it does not have the authority, to create other, nonstatutory limitations upon the felony murder statute set out in section 19.02(b)(3).

Is *Garrett* the law in Texas today? Does the judicially created merger doctrine still apply in Texas felony murder cases? The majority declines to say. But if the *Garrett* merger doctrine does still exist, it has been distinguished, limited, disagreed with, and eroded into virtual nonexistence by this Court.[24] The best historical analysis of the felony murder doctrine, critique of *Garrett*, and conclusion that the felony murder merger doctrine is not a part of Texas statutory law is contained in Presiding Judge (retired) Onion's relatively recent opinion in *Rodriguez v. State*.[25] After discussing the historical basis of the common law felony murder rule, its adoption and evolution in Texas, the statutory definition of felony murder in the 1974 Penal Code, the "troublesome" *Garrett* decision in 1978, its subsequent erosion as this Court "recogniz[ed] its intrusion on legislative turf," Judge Onion concluded that the 1994 Penal Code definition of felony murder under section 19.02(b)(3) statutorily superseded and rejected the merger rule judicially created in *Garrett.* He stated:

> Our legislature within its constitutional role remains free to abolish felony murder or limit its application or effect to other felonies. It is not the role of courts to abolish or judicially limit or expand a constitutionally valid statutory offense clearly defined by the legislature.[26]

I agree. The offense of felony murder is defined by section 19.02(b)(3) of the Penal Code. It should not be defined or limited by *Garrett* or any other judicially created merger rule.

---

**23.** *See* LaFave & Scott, § 7.5(g)(2) (discussing "merger" doctrine in context of aggravated assault and collecting cases).

**24.** *See, e.g., Ex parte Easter,* 615 S.W.2d 719 (Tex.Crim.App.) (*Garrett* distinguished; merger rule does not apply to underlying felony of injury to child), *cert. denied,* 454 U.S. 943, 102 S.Ct. 481, 70 L.Ed.2d 252 (1981); *Aguirre v. State,* 732 S.W.2d 320 (Tex.Crim.App.1982) (*Garrett* distinguished; merger rule does not apply to criminal mischief); *Murphy v. State,* 665 S.W.2d 116 (Tex.Crim.App.1983) (*Garrett* distinguished; merger rule does not apply to arson); *Homan v. State,* 19 S.W.3d 847, 849 n. 4 (Tex.Crim.App.2000) (noting that *Garrett* applies only to manslaughter and lesser included offenses of manslaughter).

**25.** 953 S.W.2d 342 (Tex.App.—Austin 1997, pet. ref'd) (stating that felony murder merger doctrine does not exist under Texas statute and holding that felony of deadly conduct may provide basis for felony murder conviction).

**26.** *Id.* at 354.

MEYERS, J., filed a dissenting opinion, in which PRICE and JOHNSON, J.J., joined.

The majority holds that because appellant was indicted with "intentionally and knowingly" committing aggravated assault, and the culpable mental state for committing manslaughter is "recklessly," appellant was not indicted for an offense that is a lesser included offense of manslaughter. *Lawson v. State,* 64 S.W.3d at 397 (Tex. Crim.App.2001) (hereinafter cited as Majority Op.). Only two years ago, eight members of this Court joined an opinion in which we held that while Texas does not have a general merger doctrine, a felony murder conviction cannot be predicated on a conviction for manslaughter or an offense that is statutorily includable in manslaughter. *Johnson v. State,* 4 S.W.3d 254, 258 (Tex.Crim.App.1999). *Johnson* thereby affirmed the underlying holding of *Garrett v. State,* 573 S.W.2d 543 (Tex.Crim. App.1978) but explicitly limited *Garrett* to its facts. *Johnson,* 4 S.W.3d at 258.

*Garrett* is factually identical to the case before us. The appellant in *Garrett* was indicted for "intentionally and knowingly" committing aggravated assault and we held that the assault could not form the basis of his felony murder conviction.

*Garrett,* 573 S.W.2d at 545 n. 2, 546. We stated in relevant part:

[a]ny other result in this case would allow circumvention of the statutory limits of the felony murder statute.... Most voluntary manslaughter offenses are initiated as aggravated assaults. If a felony murder may be predicated on the underlying aggravated assault, the statutory restriction on the scope of the doctrine that prohibits basing a felony murder prosecution on voluntary manslaughter could be regularly circumvented. The legislative prohibition against resting a Sec. 19.02(a)(3) [now 19.02(b)(3) ] prosecution on voluntary manslaughter necessarily includes a prohibition against resting such a prosecution on offenses statutorily includable in voluntary manslaughter. To hold to the contrary would render the statute meaningless and its effect nil.

*Garrett,* 573 S.W.2d at 546. By permitting a felony murder conviction to be predicated on an offense that is statutorily includable in manslaughter, the majority contradicts itself. On the one hand, the majority effectively overrules *Garrett* and eviscerates our recent opinion in *Johnson;* on the other hand, it cites no authority *other than Garrett* and *Johnson.*[1] *See* Majority Op. at 397.

1. When it affirmed appellant's conviction on remand from this Court, the Amarillo Court of Appeals acknowledged that aggravated assault may be statutorily includable in the offense of manslaughter. *Lawson v. State,* 26 S.W.3d 920, 922. However, it relied on the fact that appellant had been indicted for an intentional aggravated assault and on a decision in *Neff v. State,* 629 S.W.2d 759, 760 (Tex.Crim.App.1982) to hold that the assault in this instance was not a lesser included offense of manslaughter. *Lawson,* 26 S.W.3d at 922. The court's reliance on *Neff* was not only novel—the first instance in *Neff*'s nearly twenty years of existence—it was also misplaced. *Neff* addressed the question of whether the constitutional prohibition against

double jeopardy would prevent the retrial of an appellant for involuntary manslaughter where the *appellant* had succeeded in gaining a new trial after arguing that the trial court erred in charging the jury on murder and aggravated assault. *Neff,* 629 S.W.2d at 760. If *Neff* is instructive despite its factual dissimilarities, it is not controlling. *Neff* addressed only whether appellant's trial for aggravated assault barred retrial for *involuntary* manslaughter; the court did not address voluntary manslaughter. In addition, proof that an aggravated assault was committed intentionally and knowingly encompasses proof that the offense was committed recklessly. *See Little v. State,* 659 S.W.2d 425, 426 (Tex.Crim.App. 1983).

In addition, the majority's opinion permits precisely the type of circumvention we cautioned against in *Garrett* and "make[s] murder out of every aggravated assault that results in death." *See Garrett*, 573 S.W.2d at 545. Penal Code § 19.02(b)(3) provides that an offense is murder if the actor causes the death of another by committing an act clearly dangerous to human life in the course of committing a felony *other than manslaughter.* According to the majority, the State may now circumvent this legislative prohibition by simply alleging that the defendant committed an intentional and knowing aggravated assault rather than manslaughter. While I respectfully acknowledge the merger doctrine's judicial pedigree,[2] I am unwilling to jettison the legislature's explicit directive against relying on manslaughter to convict a defendant of felony murder. I am additionally unwilling to uproot this Court's precedent in *Johnson* and *Garrett.* I dissent.

JOHNSON, J., filed a dissenting opinion in which MEYERS, J. joins.

I join Judge Meyers's dissent.

The majority argues that because the state alleged that the assault in the instant case was committed "intentionally and knowingly," but not "recklessly," and because manslaughter includes the culpable mental state of "recklessly," the aggravated assault in this case is not a lesser-included offense of manslaughter; thus, it concludes that the merger doctrine is inapplicable here. *Ante*, at 397. This holding ignores both statutes and case law.

While the majority bases its decision on mental state, the ground for review did not specifically raise that issue: "The court of appeals erred in holding that the felony-

murder doctrine, as codified in Sec. 19.02(b)(3), applied when the precedent felony was an aggravated assault, on the same person, and the very same act which caused the homicide."

Because the majority focuses on culpable mental states, it fails to recognize that, although an assault may very well be intentional or knowing, the very essence of manslaughter is that the death resulted from recklessness. Proving an intentional mental state as to the assault does not disprove recklessness as to causing the death of the assaulted individual. It is easy to imagine a situation in which the assailant intended to assault an individual, with no desire to cause death, but "consciously disregard[ed] a substantial and unjustifiable risk" of death, Tex. Pen.Code § 6.03(c), and in fact caused the death of the individual recklessly. Determining the mental state for one offense has no bearing on determining the mental state for the other.

More to the point, art. 37.09(2) of the Texas Code of Criminal Procedure provides that "[a]n offense is a lesser included offense if ... it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person ... suffices to establish its commission." Under art. 37.09(2), aggravated assault is a lesser-included offense of manslaughter because the only difference is a less serious injury or risk of injury to the same person; when the state proves manslaughter, it will also necessarily prove aggravated assault, physical injury being a less serious injury than death. Therefore, the assault in the instant case is a lesser-included offense of manslaughter, and pursuant to the so-called "merger doctrine," a

---

**2.** *See Lawson v. State,* 64 S.W.3d at 398 (Tex. Crim.App.2001) (Cochran, J. concurring);

*Lawson,* 26 S.W.3d at 922.

conviction for felony murder is prohibited. *Johnson v. State,* 4 S.W.3d 254, 258 (Tex. Crim.App.1999) (eight judges joining majority opinion, one concurring in the judgment); Tex. Pen.Code § 19.02(b)(3).

Today's decision effectively abolishes the merger doctrine that is mandated by statute, *see* § 19.02(b)(3), and that we delineated and clarified only two years ago in *Johnson, supra.*[1] Under the majority opinion, the merger doctrine can always be avoided simply by doing as the state did in this case: charge felony murder by charging manslaughter and aggravated assault, but omit the term "recklessly" from the aggravated assault charge. In this way, the state will always be able to charge felony murder, even when the evidence shows only manslaughter or a lesser-included offense of manslaughter. As noted above, this effectively overrules *Johnson, supra,* and judicially nullifies the legislative mandate of § 19.02(b)(3).

Because today's opinion overrules, *sub silentio,* a decision only two years old, while purporting to follow it, and because it ignores legislative mandates concerning both the merger doctrine and the statutory definition of lesser-included offense, I dissent.

---

**1.** The concurring opinion asks, "Is *Garrett* the law in Texas today? Does the judicially created merger doctrine still apply in Texas felony murder cases?" *Ante,* at 401 (Cochran, J., concurring). However, we specifically answered these questions in *Johnson,* 4 S.W.3d at 258: "We hold *Garrett* did not create a general 'merger doctrine' in Texas. The doctrine exists only to the extent consistent with section 19.02(b)(3). Thus, *Garrett* hereinafter stands only for the proposition that a conviction for felony murder under section 19.02(b)(3), will not lie when the underlying felony is manslaughter or a lesser included offense of manslaughter. This holding is consistent with the plain meaning of the felony murder provision."