**Affirmed and Memorandum Opinion filed February 3, 2022.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-20-00313-CR
## NO. 14-20-00314-CR

---

### SAYANTAN GHOSE, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 122nd District Court**
**Galveston County, Texas**
**Trial Court Cause Nos. 17-CR-2032, 17-CR-2033**

---

## M E M O R A N D U M   O P I N I O N

Appellant Sayantan Ghose appeals judgments of conviction for murder and aggravated assault with a deadly weapon. Appellant presents two identical issues in both appeals. First, he argues that the trial court erroneously omitted from the jury charge certain instructions limiting the right of a citizen to make an arrest, which appellant contends deprived him of the correct application of the self-defense statute. Because appellant concededly did not object to the jury charge on

this basis, we hold the issue is waived. Second, appellant contends that legally insufficient evidence supports the jury's rejection of his self-defense theory. Concluding that the evidence is legally sufficient, we overrule this issue.

In his appeal from the murder conviction, appellant presents an additional issue: that the charge given violated the felony merger doctrine. We hold that there is no error in the charge as alleged.

Accordingly, we affirm the trial court's judgment in both cases.

## Background

Appellant is the ex-husband of Amanda Harris. Following her divorce from appellant, Amanda married Wayne Harris. Appellant repeatedly contacted Amanda and her daughter, Katie,[1] against Amanda's wishes. Appellant appeared regularly at the Harris family home unannounced and uninvited. The Harrises viewed this as stalking and harassment. Appellant received at least one criminal trespass warning from law enforcement.

One night, when Wayne was at home and Amanda and Katie were out shopping, appellant drove to the Harrises' home in League City. Amanda and Katie returned home a few minutes after appellant arrived. Amanda parked her car next to Wayne's car in the driveway. According to Amanda, she saw Wayne "with his gun drawn," and appellant was on his knees in an alcove just outside the house's front door. Amanda got out of her car, carrying a handgun, while Katie remained in the backseat. A video captured by a neighbor's security camera shows Amanda standing in front of her car. Wayne and appellant, in the alcove, are out of the camera's view.

---

[1] Katie is a pseudonym. *See* Tex. R. App. P. 9.10(a)(3).

2

Amanda called 911 and told the operator that she was making a "citizen's arrest" of appellant. The 911 operator instructed Amanda to put down her weapon and to tell Wayne to do the same. Both Wayne and Amanda set their guns down: he, on a console table inside the house, and she, on the ground in front of her car. Then, appellant stood and "ran" toward Amanda. She thought appellant was coming after her weapon.

The video shows that appellant and Wayne walked away from the front door and into the driveway. Amanda, still by the front of her car, bent down and stood back up. Appellant was walking in front of Wayne, away from Amanda. Near the garage doors, appellant and Wayne began to scuffle.

Although Amanda told the 911 operator that she did not see appellant with a weapon, appellant was in fact carrying a handgun, for which he did not have a license. He shot Amanda in the arm and leg and shot Wayne seven times, including twice in the head. Amanda fell to the ground between the two parked cars. Appellant jogged toward the street, doubled back to where Amanda lay in the driveway, and attempted to shoot her again, but the gun misfired. Appellant then returned to his car and left. When appellant was later arrested in New Mexico, police confiscated a handgun, which matched the twelve spent casings recovered from the Harrises' driveway. Amanda's and Wayne's guns were eliminated as source guns that fired the casings.

Wayne died as a result of the shooting. A Galveston County grand jury indicted appellant for murder (of Wayne) and for aggravated assault (of Amanda). Appellant pleaded not guilty to both charges.

The jury found appellant guilty on both charges. The trial court sentenced appellant to fifty years' confinement for the murder charge and twenty years'

confinement for the aggravated assault charge. Appellant appeals both judgments of conviction.

## Analysis

### A. Unpreserved Defensive Issue in Jury Charge

In his first issue in both appeals, appellant argues that the trial court erred by failing to include, sua sponte, language in the jury charge that a citizen may not use deadly force to make a citizen's arrest.

The jury charge included an instruction on "Citizen's Arrest," providing: "A peace officer or any other person, may, without a warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony or as an offense against the public peace."[2] The charge also instructed, regarding self-defense, that "a person is justified in using force against another when and to the degree that the actor reasonably believes the force is immediately necessary to protect oneself against the other person's use or attempted use of unlawful force."[3] Further, the charge provided that "[a] person is justified in using deadly force against another if the actor would be justified in using force against the other in the first place, as above set out, and when the actor reasonably believes that such deadly force is immediately necessary to protect oneself against the other person's use or attempted use of unlawful deadly force."[4]

The charge then instructed the jury that if the evidence proved beyond a reasonable doubt that appellant committed murder as alleged in the indictment, then it must find appellant guilty of the charged offense. But, if the jurors found

---

[2] This instruction tracks Code of Criminal Procedure article 14.01(a).

[3] This instruction tracks Penal Code section 9.31(a).

[4] This instruction tracks Penal Code section 9.32(a).

that appellant's use of deadly force was immediately necessary to protect himself against Wayne's or Amanda's unlawful deadly force, then they must acquit appellant and find him not guilty as charged.

During the charge conference, appellant's attorney objected to the inclusion of *any* instruction regarding a citizen's arrest: "[W]hy do we have to define it and put it into the jury charge? I mean, they don't have to prove that Amanda was making any type of citizen's arrest. And it's -- it's -- it hurts the defense." The lawyers then, according to appellant's counsel, "diverted . . . to [another section of the charge] about the threats as justifiable force." But upon returning to the subject of citizen's arrest, appellant's attorney reiterated his belief that there was no "need to define it for the jury . . . [or] to talk about it in front of the jury. . . . This law isn't applicable." At no point did appellant request additional language regarding a prohibition of deadly force during a citizen's arrest, which appellant concedes on appeal.

The Court of Criminal Appeals recently reaffirmed that a defendant must preserve in the trial court a complaint regarding submission of a defensive issue in the jury charge, in order to present the complaint for appellate review. *See Williams v. State*, ---S.W.3d---, 2021 WL 2132167, at *5-8 (Tex. Crim. App. 2021). When it comes to jury instructions, the trial judge has an absolute sua sponte duty to prepare a jury charge that accurately sets out "the law applicable to the specific offense charged." *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). But it does not inevitably follow that the judge has a similar sua sponte duty to instruct the jury on all potential defensive issues. *Id.* Therefore, unrequested defensive instructions are still subject to ordinary rules of procedural default. *Posey v. State*, 966 S.W.2d 57, 61-62 (Tex. Crim. App. 1998). A defendant cannot complain for the first time on appeal about the lack of a

5

defensive instruction absent preservation of the error. *Id.* at 62 (deciding that a "defensive issue" is not "applicable to the case" unless the defendant "timely requests the issue or objects to the omission of the issue in the jury charge").

Here, the given instruction regarding citizen's arrest was correct and tracked the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. art. 14.01(a). Appellant nevertheless argues that the trial court should have sua sponte included additional language from the Penal Code that a citizen may not use deadly force when making an arrest. *See* Tex. Penal Code § 9.51(g) ("Deadly force may only be used under the circumstances enumerated in Subsections (c) and (d)," which were not applicable in this case.). But appellant concededly did not direct the trial court to the Penal Code or otherwise object to the omission of this additional language and thus failed to place the trial court on notice that he wanted an instruction on the prohibition against use of deadly force during a citizen's arrest. We conclude that the trial court did not err in failing to submit such an instruction sua sponte. *See Bennett v. State*, 235 S.W.3d 241, 243 (Tex. Crim. App. 2007); *Posey*, 966 S.W.2d at 61; *see also Magee v. State*, No. 14-16-00408-CR, 2017 WL 2818229, at *6 (Tex. App.—Houston [14th Dist.] June 29, 2017, pet. ref'd) (mem. op., not designated for publication) ("Generally, a court is not required to instruct the jury on every conceivable statement or nuance of law potentially applicable to the case.").

We overrule appellant's first issue in appellate cause numbers 14-20-00313-CR and 14-20-00314-CR.[5]

---

[5] In his brief, appellant asserts, "Appellant did not object to the omission of the instruction that a citizen may not use deadly force to make an arrest." Based on this unobjected-to error, appellant argues he must show egregious harm under *Almanza* in order to obtain a reversal. But as the Court of Criminal Appeals notes, "when the complained-of error is the lack of a defensive instruction, the *Almanza* framework does not apply." *Williams*, 2021 WL

6

## B. Felony Murder and the Merger Doctrine

In the second issue of his appeal from the murder conviction, appellant argues that the jury charge violated the merger doctrine.

The State alleged that appellant committed the offense of murder by: (1) intentionally or knowingly causing Wayne's death; (2) intending to cause serious bodily injury and committing an act clearly dangerous to human life that caused Wayne's death; or (3) committing or attempting to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, committing or attempting to commit an act clearly dangerous to human life that caused Wayne's death. *See* Tex. Penal Code § 19.02(b) (setting out three alternative manner and means by which a person can commit murder). The third manner and means is commonly known as "felony murder." *See Zavala v. State*, 401 S.W.3d 171, 182 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

To support a murder conviction under a felony-murder theory, the predicate felony must be one "other than manslaughter." *Id.* § 19.02(b)(3). In 1978, the Court of Criminal Appeals interpreted this provision and held that, in a felony-murder case, the felony had to be felonious conduct other than the assault causing the homicide. *See Garrett v. State*, 573 S.W.2d 543, 546 (Tex. Crim. App. [Panel Op.] 1978)). "This limitation on the felony-murder rule" became "known as the merger doctrine." *Murphy v. State*, 665 S.W.2d 116, 119 (Tex. Crim. App. 1983). But the court subsequently disavowed its "overly broad statement" in *Garrett* that, in order to support a conviction under the felony-murder provision, "'[t]here must be a showing of felonious criminal conduct other than the assault causing the

---

2132167, at *5. Because appellant did not preserve his complained-of error, we need not address his arguments regarding harm.

7

homicide.'" *Johnson v. State*, 4 S.W.3d 254, 258 (Tex. Crim. App. 1999) (quoting *Garrett*, 573 S.W.2d at 546). Instead of a general merger doctrine, the court stated that the doctrine exists only to the extent consistent with Penal Code section 19.02(b)(3). Thus, *Garrett* stands only for the proposition that "a conviction for felony murder under section 19.02(b)(3) will not lie when the underlying felony is manslaughter or a lesser included offense of manslaughter." *Id.*

One type of aggravated assault is a lesser-included offense of manslaughter in the abstract—when the defendant acts recklessly and causes serious bodily injury. *See Fraser v. State*, 583 S.W.3d 564, 570 (Tex. Crim. App. 2019). But an "intentional" or "knowing" aggravated assault can support a felony-murder conviction because that kind of aggravated assault is not a lesser-included offense of manslaughter (because it requires a greater culpable mental state than the "reckless" culpable mental state required by manslaughter). *See Lawson v. State*, 64 S.W.3d 396, 397 (Tex. Crim. App. 2001).

With this precedent in mind, we turn to the charge in this case, which instructed the jury as follows:

> Our law provides that a person commits the offense of murder . . . if he committed or attempted to commit an act clearly dangerous to human life that caused the death of an individual and the defendant was in the course of intentionally or knowingly committing or attempting to commit a felony, and the death of an individual was caused while the defendant was in the course of and in furtherance of the commission or attempt of that felony or while the defendant was in immediate flight from the commission or attempt of that felony.

The charge later instructed the jury, in the application section:

> [I]f you find from the evidence beyond a reasonable doubt that on or about the 28th day of June A.D., 2017, in Galveston County, Texas, the defendant, SAYANTAN GHOSE, did then and there intentionally or knowingly commit an act clearly dangerous to human life that

8

caused the death of said Clarence Wayne Harris, by shooting a firearm at or near Clarence Wayne Harris or Amanda Harris and the defendant was in the course of intentionally or knowingly committing or attempting to commit a felony, namely, Stalking or Aggravated Assault, and the death of Clarence Wayne Harris was caused while the defendant and [sic] then you will find the defendant, SAYANTAN GHOSE, guilty of murder, as charged in the indictment.

The charge also allowed the jury to find appellant not guilty of murder but to consider appellant's guilt regarding a lesser-included offense of aggravated assault. The charge provided that "[a] person commits aggravated assault if the person intentionally, knowingly, or recklessly causes bodily injury to another and uses or exhibits a deadly weapon during the commission of the assault."

Because the charge's definition of aggravated assault included a mens rea of recklessness, appellant argues that the jury improperly could have found appellant guilty of felony murder by committing reckless aggravated assault, a lesser-included offense of manslaughter, in violation of the merger doctrine.

We disagree and hold that appellant has not demonstrated reversible error in this charge. The charge appropriately limited both the instruction and the application regarding felony murder to an "intentional" or "knowing" commission or attempt of aggravated assault. *See Lawson*, 64 S.W.3d at 397; *see also Durham v. State*, No. 13-19-00017-CR, 2020 WL 6343338, at *10 (Tex. App.—Corpus Christi Oct. 29, 2020, pet. ref'd) (mem. op., not designated for publication) ("In charging Durham with felony murder, the State need only prove that Durham intentionally or knowingly committed or attempted to commit aggravated assault by threat or injury and in the course of and in furtherance of the commission or attempt, he committed an act 'clearly dangerous to human life.'"). The jury could not have convicted appellant of felony murder based on a reckless aggravated assault because the charge expressly instructed the jury to find beyond a reasonable

doubt that appellant "intentionally or knowingly committ[ed] or attempt[ed] to commit a felony, namely, . . . Aggravated Assault." Accordingly, the charge is consistent with Penal Code section 19.02(b)(3), does not violate the merger doctrine, and is not erroneous for the reasons appellant contends. *See Lawson*, 64 S.W.3d 396, 397; *Esquivel v. State*, No. 01-16-00301-CR, 2017 WL 3910793, at *6 (Tex. App.—Houston [1st Dist.] Sept. 7, 2017, pet. ref'd) (mem. op., not designated for publication) ("We thus conclude that the jury charge's application paragraph regarding felony murder was not erroneous, and the jury charge did not contain an invalid legal theory of murder."); *cf. Keen v. State*, No. 03-19-00744-CR, 2021 WL 4819078, at *7 (Tex. App.—Austin Oct. 15, 2021, pet. ref'd) (mem. op., not designated for publication) (error in charge when submission of felony murder "did not differentiate between an aggravated assault committed intentionally or knowingly and one committed only recklessly").

We overrule appellant's second issue in appellate cause number 14-20-00313-CR.

## C.     Sufficiency of the Evidence of Self-Defense

In his remaining issue in both appeals, appellant argues that the evidence at trial was legally insufficient to support the jury's rejection of his self-defense theory. Again, the court included the following self-defense instruction in the jury charge, in relevant part:

> Upon the law of self-defense, you are instructed that a person is justified in using force against another when and to the degree that the actor reasonably believes the force is immediately necessary to protect oneself against the other person's use or attempted use of unlawful force.
>
> A person is justified in using deadly force against another if the actor would be justified in using force against the other in the first place, as set out above, and when the actor reasonably believes that

10

such deadly force is immediately necessary to protect oneself against the other person's use or attempted use of unlawful deadly force.

. . .

In determining the existence of real or apparent danger, you should consider all the facts and circumstances in evidence before you, all relevant facts and circumstances surrounding the event in question, if any, the previous relationship existing between the accused and the complainant, together with all relevant facts and circumstances going to show the condition of the mind of the defendant at the time of the offense, and in considering such circumstances, you should place yourselves in the defendant's position at the time and view them from his standpoint alone.

1. *Standard of review*

We review the legal sufficiency of the evidence to support a jury's rejection of a self-defense claim under the *Jackson v. Virginia* standard. *See Martinez v. State*, No. 14-20-00136-CR, 2021 WL 4165302, at *2 (Tex. App.—Houston [14th Dist.] Sept. 14, 2021, pet. ref'd) (mem. op., not designated for publication); *Smith v. State*, 355 S.W.3d 138, 144 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). Under that standard, we must examine all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We look not to whether the State presented evidence that refuted appellant's self-defense evidence, but to whether after viewing all the evidence in the light most favorable to the prosecution, any rational factfinder would have found the essential elements of murder beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt. *See Darkins v. State*, 430 S.W.3d 559, 565 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (citing *Saxton v. State*, 804 S.W.2d

11

910, 914 (Tex. Crim. App. 1991) and *Hernandez v. State*, 309 S.W.3d 661, 665 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd)).

The reviewing court must defer to the jury's determinations of the witnesses' credibility and the weight to be given their testimony, as the jury is the sole judge of those matters. *Jackson*, 443 U.S. at 326; *Brooks v. State*, 323 S.W.3d 893, 899-900 (Tex. Crim. App. 2010). We must be mindful that self-defense is a fact issue to be determined by the jury and that the jury is free to accept or reject any defensive evidence on the issue. *Saxton*, 804 S.W.2d at 913-14.

2. *Application*

According to appellant, the evidence at trial showed that Wayne and Amanda initiated the use of deadly force, that such deadly force was unlawful, and that he was "attempting to leave the premises when he was physically assaulted by Wayne Harris." Regarding Wayne, appellant relies on a portion of the neighbor's video recording purportedly showing Wayne "grab[bing] Appellant and toss[ing] him to the ground." Regarding Amanda, appellant focuses on a portion of the video showing Amanda bending down toward the driveway after she had placed her handgun on the ground in front of her car. According to responding law enforcement, her gun was found in between the two parked vehicles. Based on this evidence, appellant asserts that Amanda must have picked her gun back up and brandished it at him before he shot her and she fell to the ground. In sum, appellant's argument is premised on his assertion that Wayne and/or Amanda were using unlawful deadly force at the relevant moment. Thus, he argues, he was lawfully entitled to defend himself with deadly force.

The jury rejected appellant's defensive theory, and we conclude it could have done so beyond a reasonable doubt. The evidence highlighted by appellant may, under his view of the entire circumstances, support his self-defense argument,

but appellant ignores other evidence a rational factfinder could have believed that refutes self-defense. For example, the jury reasonably could have found that neither Wayne nor Amanda were still armed when appellant shot them. It is undisputed that Wayne set his gun on a table inside the house. The video shows that Wayne and appellant physically engaged each other in the driveway, and that interaction was at most only a matter of seconds and there is no indication that Wayne attempted to exert deadly physical force against appellant at that moment. Appellant is a large man, and it is uncontroverted that Wayne was unarmed at that time. Regarding Amanda, the video shows her bending down toward the ground, but we cannot see that she picked up her gun. Amanda testified that she did not remember picking up her gun or moving it, although she acknowledged it was possible. The jurors were free to resolve any inconsistency against appellant. Appellant was not entitled to use deadly force against unarmed persons who did not pose an immediate threat to appellant's safety. *See Graves v. State*, 452 S.W.3d 907, 911 (Tex. App.—Texarkana 2014, pet. ref'd) (finding no evidence of self-defense when initial aggressor was shot only after he was in the process of backing away from defendant).

Also, appellant shot Wayne seven times, shot Amanda twice, and then began to flee but returned and attempted to shoot Amanda a third time. The number of shots fired at Wayne and the calculated attempt to shoot an injured Amanda a third time militates against appellant's claim of self-defense. *See, e.g.*, *Russell v. State*, No. 05-17-00124-CR, 2018 WL 525559, at *6 (Tex. App.—Dallas Jan. 24, 2018, pet. ref'd) ("Additionally, the jury could also reasonably infer that the sheer number of bullets that were fired—Tell was shot twelve times and Garcia was shot eight times—are beyond what can be considered immediately necessary to protect appellant from any action taken by either Tell or Garcia."); *Smith*, 355 S.W.3d at

13

147; *Heng v. State*, No. 01-04-00450-CR, 2006 WL 66461, at *4 (Tex. App.—Houston [1st Dist.] Jan. 12, 2006, pet. ref'd) (mem. op., not designated for publication) (determining that evidence was sufficient to support rejection of self-defense claim where evidence showed that defendant armed himself, that victim had no weapon, and that defendant shot victim multiple times); *Cleveland v. State*, 177 S.W.3d 374, 387 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (jury could have reasonably concluded that defendant's conduct in continuing to stab wife as she lay bleeding on floor was inconsistent with his claim of self-defense).

Finally, appellant fled the scene of the shooting and was apprehended in a different state. Flight reflects consciousness of guilt, which a jury can consider in rejecting a self-defense claim. *See Clayton v. State*, 235 S.W.3d 772, 780 (Tex. Crim. App. 2007) (noting that a factfinder may draw an inference of guilt from the circumstance of flight); *Kirk v. State*, 421 S.W.3d 772, 781 (Tex. App.—Fort Worth 2014, pet. ref'd) (referencing flight from the scene of a crime as evidence a jury could consider in rejecting a self-defense claim).

It was the jury's responsibility to weigh and resolve conflicting evidence, assess witness credibility, and draw reasonable inferences in reaching a verdict. *See Brooks*, 323 S.W.3d at 898-99. Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant was not acting in self-defense when he shot Wayne or when he shot Amanda. *See Saxton*, 804 S.W.2d at 914. We overrule appellant's third issue in appellate cause number 14-20-00313-CR and his second issue in appellate cause number 14-20-00314-CR.

## Conclusion

We affirm the trial court's judgments.

/s/ Kevin Jewell
   Justice

Panel consists of Justices Jewell, Bourliot, and Poissant.

Do Not Publish — Tex. R. App. P. 47.2(b).