

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

## NO. PD-0964-24

---

### MARIAN FRASER, Appellant

### v.

### THE STATE OF TEXAS

---

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE SEVENTH COURT OF APPEALS McLENNAN COUNTY

---

**FINLEY, J., filed a concurring opinion.**

## CONCURRING OPINION

I join the Court's sufficiency of the evidence analysis. I agree that under our current jurisprudence, the evidence is sufficient to support Appellant's conviction for felony murder. But I'm skeptical. Our current felony murder jurisprudence appears unsupported by the plain text of the statute.

In Texas, a person commits felony murder if the person:

[C]ommits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, the person commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual[.]

TEX. PENAL CODE § 19.02(b)(3). This Court has interpreted the felony murder statute to allow any felony that is neither manslaughter nor a lesser included offense of manslaughter to serve as the underlying felony. *Johnson v. State*, 4 S.W.3d 254, 258 (Tex. Crim. App. 1999). Thus, under our current jurisprudence, Appellant's singular act—giving diphenhydramine to C.F.—is sufficient to constitute *both* the felony (injury to a child) *and* the act clearly dangerous to human life that caused the death of C.F. *Id.* This interpretation of the felony murder statute, in my view, departs from Section 19.02(b)(3)'s plain text.

To start, our current interpretation of the felony murder statute renders meaningless the Legislature's use of the word "and" in Section 19.02(b)(3). "The use of the word 'and' between two words or phrases most commonly means that the words or phrases on either side of the 'and' are required." *State v. Hardin*, 664 S.W.3d 867, 874 (Tex. Crim. App. 2022) (citing ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 116 (2012)). By its plain text, the felony murder statute requires (1) a person commit or attempt to commit a felony, (2) the

person commit or attempt to commit an act clearly dangerous to human life that causes the death of an individual, and (3) that act clearly dangerous to human life to be committed "in the course of and in furtherance of" the underlying felony, or "in immediate flight from" the underlying felony." *See* TEX. PENAL CODE § 19.02(b)(3).[1] The act clearly dangerous to human life is a requirement separate from, and in addition to, the conduct necessary to commit the underlying felony. If the act clearly dangerous to human life is necessary to commit the underlying felony, then it is necessarily subsumed by the completed or attempted felony offense and cannot also serve as the additional bad act.

This textual understanding of the felony murder statute is supported by history. At early common law, a person was held liable for murder when he caused a death, although unintentionally, while committing a felony. *See* 4 W. BLACKSTONE, COMMENTARIES 200 (1897). However, because "[i]t would subvert any effort to grade homicide if every felonious homicide aggravated itself to murder[,] [s]ome criterion is . . . needed to distinguish predicate felonies from

---

[1] As Judge Slaughter wrote in her dissent in our opinion from Appellant's first trial, our current interpretation of the felony murder statute also disregards the phrases "in furtherance of" and "in immediate flight from." *Fraser v. State*, 583 S.W.3d 564, 586 (Tex. Crim. App. 2019) (Slaughter, J., dissenting). As she put it, "how can one commit an act that is in furtherance of itself?" *Id.*; *see also id.* ("Likewise, how can one commit an act 'in immediate flight from' the felony that constitutes the same act?").

the homicides they aggravate." Guyora Binder, *Making the Best of Felony Murder*, 91 B.U. L. Rᴇᴠ. 403, 519 (2011). Most States adopted merger limitations to the harsh common law rule. *See, e.g.*, *People v. Hüter*, 184 N.Y. 237 (1906); *People v. Burton*, 491 P.2d 793 (Cal. 1971).

This Court previously adopted a merger limitation, which prohibited felony murder predicated on an aggravated assault. *Garrett v. State*, 573 S.W.2d 543, 546 (Tex. Crim. App. [Panel Op.] 1978). We required for there to "be a showing of felonious criminal conduct other than the assault causing the homicide." *Id.* This limitation accounted for two considerations. First, "[t]he felony murder rule calls for the transfer of intent from one criminal act to another." *Id.* at 545. The felonious intent from the underlying felony must transfer "to the act causing the homicide." *Id.* at 545–46. Without an act independent of the underlying felony, there is no act upon which to transfer intent—there is only one act and one felonious intent. *See id.* at 546. Second, when the felony murder doctrine is applied to situations in which the underlying felony, such as aggravated assault, "and the act resulting in the homicide [are] one and the same," there "is an attempt to split into unrelated parts an indivisible transaction." *Id.* To avoid this indivisible transaction issue, the Legislature expressly restricted felony murder such that manslaughter cannot serve as the predicate felony. *See id.* Indeed, "[m]ost voluntary

manslaughter offenses are initiated as aggravated assaults." *Id.* With these two considerations in mind, this Court in *Garrett* properly recognized that felony murder liability is improper when the act clearly dangerous to human life is also a necessary factual element of the predicate felony offense.

We later retreated from *Garrett*, disavowing and limiting our holding in several decisions. *See, e.g.*, *Ex parte Easter*, 615 S.W.2d 719, 721 (Tex. Crim. App. 1981) (concluding that *Garrett*'s merger rule was inapplicable because "the crime of injury to a child is not a lesser included offense to the crime of murder"); *Murphy v. State*, 665 S.W.2d 116 (Tex. Crim. App. 1983) ("[A]ppellant's act of arson in setting a habitation on fire and the resulting homicide of the victim were not one in the same."); *Aguirre v. State*, 732 S.W.2d 320, 325 (Tex. Crim. App. 1982) (op. on reh'g) ("[A]ppellant's act of criminal mischief and the deceased's resulting homicide were not one in the same."). And in *Johnson*, this Court limited *Garrett*'s application to one situation— when a felony murder conviction is premised upon the underlying felony of manslaughter or a lesser included offense of manslaughter. 4 S.W.2d at 258. *Johnson*'s holding, we said, was "consistent with the plain meaning of the felony murder provision." *Id.* But as discussed above, *Johnson*'s holding is inconsistent with the literal text of the felony murder statute because it overlooks Section 19.02(b)(3)'s use of "and" which requires the act clearly

dangerous to human life to be distinct from the acts necessary to commit the predicate felony offense.

Further, *Johnson*'s holding creates absurd results. For example, may felony aggravated assault serve as the predicate felony of felony murder? The *Johnson* Court—like the *Garrett* Court—certainly thought not. In fact, we said in *Johnson*, "If a felony murder may be predicated on the underlying aggravated assault, the statutory restriction on the scope of the doctrine that prohibits basing a felony murder prosecution on voluntary manslaughter could be regularly circumvented." *Id.* at 258 (quoting *Garrett*, 573 S.W.2d at 546). And yet two years later, this Court disavowed that principle and allowed the State to secure a felony murder conviction premised upon a felony aggravated assault that caused the death of the complainant. *Lawson v. State*, 64 S.W.3d 396, 397 (Tex. Crim. App. 2001). *Lawson* reasoned that "[a]n 'intentional and knowing' aggravated assault is not a lesser included offense of manslaughter, nor is it statutorily includable in manslaughter." *Id.* (first citing *Johnson*, 4 S.W.3d at 258; and then citing *Garrett*, 573 S.W.2d at 546). Since *Lawson*, as long as the State indicts a person for committing a felony assault with a *mens rea* greater than recklessness, felony murder is available. *Cf. id.*

Frankly, we got it right in *Garrett*, and we have erred to move away from its holding. As Judge Slaughter put it in our first iteration of *Fraser*: "our

current interpretation" of the felony murder statute is plainly "wrong." *Fraser*, 583 S.W.3d at 582 (Slaughter, J., dissenting); *see also id.* at 574 (Walker, J., concurring) ("The Court is giving a green light to the State to seek and secure first degree murder convictions even in cases that should be charged as manslaughter or even criminally negligent homicide when children, elderly individuals, or disabled individuals are the victims.").

But even though the felony murder statute does not apply to situations in which the underlying felony is an assaultive offense, the State is not entirely prevented from moving forward with a prosecution. Under Section 19.02(b)(2) of the Penal Code, a person commits murder if he "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." TEX. PENAL CODE § 19.02(b)(2). By its plain text, Section 19.02(b)(2) does not require a separate act. It requires an intent to cause serious bodily injury, an act clearly dangerous to human life, and the death of an individual, which need not be intended. Thus, it may apply to any act intended to cause serious bodily injury, such as felony aggravated assault and other assaultive type offenses.

Section 19.02(b)(2), for example, could have applied here. Appellant was charged with first-degree felony injury to a child, which requires a person to intentionally or knowingly cause serious bodily injury to a child. *See* TEX.

PENAL CODE § 22.04(a)(1), (e). And as the State alleged, Appellant committed "an act clearly dangerous to human life, namely, by administering diphenhydramine to [C.F.] and/or causing [C.F.] to ingest diphenhydramine, which caused the death of [C.F.]." The only material difference is that the State would have been required to prove the *mens rea* of intentionally. The State opted not to indict under Section 19.02(b)(2) and opted instead to indict under Section 19.02(b)(3). Rather than proving that Appellant acted intentionally, the State used the felony murder statute and felony injury to a child to lower the minimum requisite mental state.[2]

With these thoughts in mind, we should, at the earliest opportunity, reexamine our felony murder jurisprudence. Our current interpretation of the felony murder statute appears to lack support from its plain text. Allowing the same act to serve as the underlying felony and the act clearly dangerous to human life deviates from Section 19.02(b)(3)'s text.

---

[2] An offense under the injury to a child statute is punishable as a "state jail felony when the person acts with criminal negligence." TEX. PENAL CODE § 22.04(g). The State presumably could have alleged that Appellant acted with criminal negligence and still secured its felony murder conviction. *Cf. Contreras v. State*, 312 S.W.3d 566, 583–85 (Tex. Crim. App. 2010) (concluding that there was no jury unanimity issue in a felony murder conviction when the underlying felony was injury to a child and the mental states of intentionally, knowingly, recklessly, and with criminal negligence were alleged in the alternative). This example illustrates the flaw with our current felony murder jurisprudence: The State may obtain a murder conviction by proving the lowest culpable mental state (criminal negligence) without ever proving that the defendant engaged in a separate act clearly dangerous to human life.

With these thoughts, I join the Court's sufficiency analysis.

**Filed: September 3, 2025**
**Publish**